Matter of FALSTAFF BREWING COR-
PORATION RE: NARRAGANSETT ·
BREWERY FIRE.

No. 93–264–M.P..

Supreme Court of Rhode Island.

Feb. 23, 1994.

Rajaram Suryanarayan, Gerald C. DeMaria, Higgins, Cavanagh & Cooney, Providence, for plaintiff.

Charles Nystedt, Providence, Robert Flaherty, Warwick, for defendant.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a petition for certiorari filed by Kathleen Kowalewski Arsenault and her minor son, John P. Kowalewski (petitioners). The petitioners sought review of a Family Court order mandating the disclosure of the juvenile's police records as they relate to a fire that occurred in a building owned by the respondent, Falstaff Brewing Corporation (Falstaff). The Family Court, after a hearing, determined that G.L.1956 (1981 Reenactment) § 14–1–66, as enacted by P.L.1981, ch. 317, § 1, authorizes the release of the police records to the victim of the crime. For the reasons stated herein, we agree with the Family Court's decision and affirm the order.

### I

#### *Facts/Travel*

On October 13, 1991, a fire occurred at the site of the former Narragansett Brewery complex in Cranston, Rhode Island. In late October 1991 the Cranston police department arrested and charged two juveniles, Daniel J. Parenteau and John P. Kowalewski, with multiple counts relating to the fire. After trial, petitioner John P. Kowalewski was found not delinquent on the charge of burning a building, and the charge of breaking and entering in the daytime was dismissed.

On or about January 24, 1992, Falstaff obtained the release of the juveniles' names pursuant to § 14–1–66. Thereafter, on July 14, 1992, Falstaff filed a civil action in Providence County Superior Court against both juveniles and their parents, claiming dam-

ages resulting from the October 1991 fire. In pursuit of the civil action, Falstaff served a *subpoena duces tecum* upon the Cranston police department in October 1992 seeking the records of the arrest and charges against the minors. The petitioners immediately moved to quash the subpoena and moved for a protective order. After an *in camera* inspection of the Cranston police department's investigative file, the Superior Court quashed the *subpoena duces tecum* and granted petitioners' motion for protective order "without prejudice to any right that [Falstaff] may have to petition the Rhode Island Family Court for access to" the records.

Falstaff then filed a motion for disclosure of the police records in Family Court. The petitioners objected to this motion and moved for an order pursuant to G.L.1956 (1981 Reenactment) §§ 12–1–12, as amended by P.L.1988, ch. 638, § 1 and 12–1–12.1, as amended by P.L.1988, ch. 638, § 2, expunging and sealing the record of the Cranston police department and the record of the Family Court. On May 10, 1993, after reviewing memoranda by the parties and hearing oral arguments, the Family Court granted Falstaff's motion to release the police records and denied petitioners' motion for stay. The Family Court justice reasoned that the confidentiality that a juvenile offender enjoys is found in the protection of the juvenile's name from public disclosure. Because the Legislature authorized release of a juvenile's name by virtue of § 14–1–66, the cloak of confidentiality has been removed, and the victim may obtain the police records relating to the crime that the juvenile was accused of committing.

■■ On May 13, 1993, this court issued a stay of the Family Court order and subsequently granted petitioners' writ of certiorari.[1] Our review by writ of certiorari is limited to examining the record to determine if an error of law has been committed. *Picerne v. DiPrete,* 542 A.2d 1101, 1104 (R.I.1988). This court will not weigh the evidence presented in the case; rather, we are constrained to examine the record to determine whether legally competent evidence exists to support the court's findings. *Ervin v. Ervin,* 458 A.2d 342, 344 (R.I.1983).

The sole issue on appeal is a question of law: Does § 14–1–66 authorize the release of a juvenile's police records to the victim of a crime? For the reasons stated herein, we are of the opinion that § 14–1–66 reveals a clear legislative intent to allow release of a juvenile's police record to a victim.

## II

### Discussion

The Family Court justice, in a bench decision, interpreted § 14–1–66 as allowing release of the police record of a juvenile in addition to release of that juvenile's name and address. Resolution of the issue in the instant case, therefore, requires the statutory construction of § 14–1–66.

Section 14–1–66 provides in pertinent part:

"*Application by victim to obtain name of juvenile.*—Upon written motion by the victim of a crime or his attorney, the family court may, in its discretion, and upon good cause shown, divulge the name and address of the juvenile accused of committing the crime solely for the purpose of allowing the victim to commence a civil action against the juvenile and/or his parents to recover for damages sustained as a result of said crime * * *."

■■ Well-established canons of statutory construction delegate to this court the function and duty as final arbiter on questions of statutory construction. *Krikorian v. Rhode Island Department of Human Services,* 606 A.2d 671, 675 (R.I.1992); *D'Ambra v. North Providence School Committee,* 601 A.2d 1370, 1374 (R.I.1992). As the final arbiter this court has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning. *Town of East Greenwich v. O'Neil,* 617 A.2d 104, 108 (R.I.1992); *Krikorian,* 606 A.2d at

---

1. Although an entry of appearance also has been filed in this court on behalf of Daniel J. Parenteau, he did not object to the release of his police records, nor was he a party to the May 10, 1993 Family Court proceeding.

675; *In re Advisory Opinion to the Governor*, 504 A.2d 456, 459 (R.I.1986). A statute may not, however, be construed in a way that would result in "absurdities or would defeat the underlying purpose of the enactment." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987). In particular, " '[i]f a mechanical application of a statutory definition produces an absurd result or defeats legislative intent, this court will look beyond mere semantics and give effect to the purpose of the act.' " *Labbadia v. State*, 513 A.2d 18, 22 (R.I.1986). Thus, our primary task in construing a statute is to attribute to the enactment the meaning most consistent with its policies and with the obvious purposes of the Legislature, *Brennan*, 529 A.2d at 637, by viewing the statute in light of the circumstances that motivated its passage. *Krikorian*, 606 A.2d at 675.

## A

### Legislative Intent

■■ Applying these principles to § 14–1–66, we begin with the plain language of the statute to determine the legislative intent behind its enactment. Section 14–1–66 clearly states that the purpose of breaching the cloak of confidentiality afforded to juvenile offenders is to allow victims "to recover for damages sustained as a result of" the crime the juvenile is "accused of committing."[2] The method of recovery envisioned by the Legislature is a civil action brought in District or Superior Court. In furtherance of this objective, § 14–1–66 expressly authorizes the release of the name and address of the juvenile offender. The decisive inquiry therefore becomes whether § 14–1–66 also implicitly authorizes the release of a police file or whether the statute should be narrowly construed to allow release solely of the juvenile's name and address. We are of the opinion that a reasonable interpretation of § 14–1–66 would authorize release of the record to a victim.

■ The protection a juvenile offender enjoys is rooted in withholding the juvenile's name from public disclosure. The actual *actions* taken by a juvenile, in and by themselves, are not subject to the protections of confidentiality. Rather, the confidentiality stems from the withholding from the public of *the name* of the juvenile who committed or is accused of committing the criminal acts. *See Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 107–09, 99 S.Ct. 2667, 2673–74, 61 L.Ed.2d 399, 407–09 (1979) (Rehnquist, J., concurring). Therefore, by allowing disclosure of the names of the juveniles, the Legislature lifted the cloak of confidentiality that generally protects juvenile offenders. Once the confidentiality has been breached, there is no reasonable basis for withholding from the victim the police records and the investigative file as it relates to the crime for which the victim seeks damages.

■ The petitioners, however, advocated a restrictive interpretation of § 14–1–66 to allow the release of only the juvenile's name and address. According to petitioners, the legislative intent behind § 14–1–66 has been served once the victim has received the name and address of the juvenile. We disagree. The clear legislative intent behind § 14–1–66 is to allow victims to recover, via a civil action, damages suffered at the hands of a juvenile offender. If we were to adopt petitioners' interpretation of the statute, the practical result would be frustration of this express intent rather than fostering that intent. It is unreasonable to conclude that the General Assembly intended to allow victims to bring actions to recover damages but then denied them the tools for obtaining that relief. In essence, the restrictive reading of § 14–1–66 that petitioners advocate would render nugatory the legislative purpose of the statute. This court will not adopt statutory interpretations that create absurd results or defeat the underlying purpose of an enactment. *Brennan*, 529 A.2d at 637.

2. General Laws 1956 (1981 Reenactment) § 14–1–66, as enacted by P.L.1981, ch. 317, § 1, makes clear that a finding of delinquency is not a prerequisite to release of a juvenile's name. The differing burdens of proof required to be met in a civil action (preponderance of evidence) versus a juvenile delinquency proceeding (beyond a reasonable doubt) justify allowing release of the name of a juvenile accused of a crime to a victim. Thus, the fact that petitioner in the instant case was found not delinquent is irrelevant to our interpretation of § 14–1–66.

## B

### Conflict with § 14-1-64

The petitioners also argued that the Family Court justice erred by failing to factor § 14-1-64, as amended by P.L.1990, ch. 325, § 1, into the interpretation of § 14-1-66. Section 14-1-64 specifically bars public disclosure of a juvenile's police record except, upon a showing of good cause, to parents, guardians, attorneys, and those in *loco parentis* to the juvenile. Section 14-1-64 provides in pertinent part:

"All police records relating to the arrest, detention, apprehension and disposition of any juveniles shall be kept in files separate and apart from the arrest records of adults and shall be withheld from public inspection, but such records shall be open to inspection upon good cause shown by the parent, guardian, attorney of the juvenile involved and those in loco parentis to the juvenile, upon the written order of a justice of the family court."

The petitioners argued that reading § 14-1-66 *"in pari materia"* with § 14-1-64 discloses that § 14-1-66 was enacted as a narrow, limited exception to § 14-1-64. We disagree with petitioners' interpretation.

Basic to the rules of statutory construction is the principle that where two apparently inconsistent provisions are contained in a statute, every effort should be made to construe and apply the provisions as consistent. *Brennan,* 529 A.2d at 637. Where two provisions are irreconcilable, the inconsistency may be resolved by giving effect to the provision last enacted. *Davis v. Cranston Print Works Co.,* 86 R.I. 196, 199, 133 A.2d 784, 786 (1957).

The petitioners' argument is based on the premise that there is a strong legislative policy of confidentiality, enunciated in § 14-1-64 and throughout the General Laws, that overrides any other legislative intent. The policy of confidentiality that protects juveniles from future "civil disabilities" and from the social and economic stigmatization that accompany criminal convictions is concededly an important part of the juvenile justice system. *See Taylor v. Howard,* 111 R.I. 527, 530, 304 A.2d 891, 893-94 (1973). As petitioners have noted, § 14-1-64 was enacted in furtherance of this intended purpose.

The Legislature, however, also has expressed the competing interest of allowing victims the opportunity to obtain restitution for damages suffered at the hands of a juvenile offender. This intent is expressed not only in § 14-1-66, but also throughout chapter 1 of title 14. *E.g.,* § 14-1-32.1, as amended by P.L.1989, ch. 185, § 1 (Juvenile victim restitution program granting the Family Court authority to order juveniles to compensate victims for losses suffered as a result of a juvenile's acts); § 14-1-67.1, as enacted by P.L.1992, ch. 350, § 2 (authorizing revocation of a minor's motor-vehicle operator's license for failure to make court-ordered restitution). Important to reconciliation of these competing interests is the fact that § 14-1-66 was enacted in 1981, subsequent to the 1977 enactment of § 14-1-64. *Compare* P.L.1977, ch. 70, § 1 (enacting § 14-1-64) *with* P.L.1981, ch. 317, § 1 (enacting § 14-1-66). Thus, as the more recently enacted provision, § 14-1-66 more accurately reflects the current legislative intent.[3] *See Davis,* 86 R.I. at 199, 133 A.2d at 785.

## III

### Conclusion

In conclusion, we note that this opinion does not disregard the legislative intent to

---

**3.** We note that § 14-1-64 underwent a limited amendment subsequent to § 14-1-66's enactment. *Compare* P.L.1990, ch. 325, § 1 (amending § 14-1-64) *with* P.L.1981, ch. 317, § 1 (enacting § 14-1-66). This amendment, however, has no negative effect on the previously expressed legislative intent to lift the cloak of confidentiality as found in § 14-1-66. In fact, the 1990 amendment to § 14-1-64, along with other legislative actions taken subsequent to § 14-1-64's 1977 enactment, supports the conclusion that the legislative intent is to restrict the scope of confidentiality. *See, e.g.,* P.L.1990, ch. 325, § 1 (amendment to § 14-1-64 authorizing release of the identity of any juvenile who has been waived out of Family Court pursuant to § 14-1-7.1, as amended by P.L.1990, ch. 18, § 2 or certified and convicted pursuant to § 14-1-7.2, as amended by P.L.1990, ch. 18, § 2); P.L.1985, ch. 349, § 1 (amendment to § 14-1-40 authorizing use of delinquency finding in sentencing proceedings if juvenile's bad act constitutes adult felony).

afford juveniles the opportunity to enter adulthood free of the stigmatization that follows criminal offenders. The notoriety that would attach to publication of juvenile offenses could "follow troubled minors throughout their lives and hamper their educational, social, and employment opportunities" and even backfire by conferring "celebrity status * * * with the resulting public recognition acting as a spur to future delinquent behavior." Paul R. Kfoury, *Children Before the Court*, 17 New Eng. J. on Crim. & Civ. Confinement 55, 56 (Winter 1991). We recognize the purpose of fostering juvenile rehabilitation by hiding "youthful errors and 'bury[ing] them in the graveyard of the forgotten past.'" *Smith*, 443 U.S. at 107, 99 S.Ct. at 2673, 61 L.Ed.2d at 407–08 (quoting *In re Gault*, 387 U.S. 1, 24–25, 87 S.Ct. 1428, 1442, 18 L.Ed.2d 527, 544 (1967)). But critics of a closed juvenile justice system believe that disclosing identities of minors can deter juvenile crime and foster greater responsibility for conduct. Kfoury, *supra*, at 56. They argue that "[v]iolent juvenile crime and serious property offenses * * * [are] particular targets of firm policies favoring exposure of juvenile offenders. This trend appears to be a reflection of a sweeping societal concern with serious juvenile offenses * * * which * * * justify disclosure of the juvenile's identity." *Id.* at 66. *See State of New Jersey in the Interest of B.C.L.*, 82 N.J. 362, 375–79, 413 A.2d 335, 342–43 (1980).

 We are of the opinion that the legislative intent to allow victims, pursuant to § 14–1–66, to pursue civil actions against juveniles is clear and cannot be ignored. Where the Family Court, in exercise of its discretion, determines as it did in the case before us that good cause has been shown to warrant release of a juvenile's name to a victim for purposes of seeking restitution, we find that § 14–1–66 also authorizes the review of the juvenile's police record by the victim, though not by the general public, as it pertains to the act alleged to have caused damage to the victim. Falstaff shall limit its use of information in the police record solely for purposes of discovery and prosecution in respect to its civil action.

Accordingly, for the reasons stated herein, the petition for certiorari is denied and dismissed. The writ previously issued is hereby quashed, and the Family Court order authorizing Falstaff to review the police file for discovery is affirmed. The papers in the case are remanded to the Family Court with our decision endorsed thereon.