**RHODE ISLAND DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION.**

v.

**WARWICK SCHOOL COMMITTEE.**

No. 95–612–M.P.

Supreme Court of Rhode Island.

May 29, 1997.

William E. Smith, Paul Pontarelli, Providence, for Plaintiff.

Richard A. Skolnik, Providence, Howard R. Haronian, Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a petition for certiorari by the Warwick Teachers' Union (union) seeking review of a decision of the Board of Regents for Elementary and Secondary Education (Regents). The Regents reversed a finding by the Commissioner of Education (commissioner) that the Warwick School Committee (school committee) had acted unlawfully when it engaged the services of a health professional who was not a certified school-nurse-teacher to provide care to a student enrolled in a Warwick public school. For the reasons stated below, we deny the petition for certiorari and affirm the decision of the Regents' in this case. A summary of the facts relevant to this petition follows.

### Facts and Procedural History

This controversy arose when the school committee retained a registered nurse on a contract basis for the purpose of providing services to a special education student enrolled in the Warwick school system. The then-six-year-old-child's open tracheostomy required medical monitoring throughout the day. The registered nurse assisted the child at home in the morning, accompanied the child to school on the school bus, remained with the child to monitor her and suction her air passage throughout the school day, then accompanied the child on the bus to her home at the end of the school day. The nurse's services were provided pursuant to the child's Individualized Education Program (IEP),[1] which stipulated that she be monitored by "qualified medical personnel" on the bus and at school. The nurse provided no other services to the Warwick School Department; she was not involved in any aspect of its educational program, performed no instructional activities, and provided no other health-related services to any other children at the school.

1. In accordance with the Rhode Island Regulations of the Board of Regents for Elementary and Secondary Education Governing the Special Education of Students with Disabilities, a school district is required to develop and implement an IEP for each student with a disability.

At some point the Rhode Island Department of Elementary and Secondary Education (department) issued an advisory opinion stating that the committee was violating state education statutes by staffing the school health program with health professionals other than certified nurse-teachers. Pursuant to G.L.1956 § 16–39–1, the school committee sought a reexamination by the commissioner of the department's opinion. In response, on December 11, 1992, the commissioner appointed a hearing officer to resolve the dispute between the committee and the department. Relying on this Court's decision in *Cranston Teachers' Association v. Cranston School Committee*, 424 A.2d 648 (R.I.1981), the hearing officer concluded that G.L.1956 §§ 16–21–7 and 16–21–8 require that the "organized direction and supervision of a healthful school environment, health education, and services" be rendered exclusively by certified nurse-teachers. The hearing officer found that the services in the instant case comprised part of the "school health program" as described in § 16–21–7, and thus could be performed only by certified nurse-teachers. Thereafter, the commissioner ordered the school committee to "cease and desist in its use of other health professionals in providing health services to students."

The school committee appealed the commissioner's decision to the Regents, pursuant to § 16–39–3, and, while the matter was pending on appeal, the Regents granted the union's motion to intervene.[2] Following the Regents' reversal of the commissioner's decision, this Court agreed to review the matter in response to the union's petition for certiorari.

### Analysis

The union contended that §§ 16–21–7 and 16–21–8 mandate that the health-care services be rendered to the child exclusively by a certified school-nurse-teacher. Section 16–21–7 provides in pertinent part:

2. The union's collective-bargaining agreement is not an issue in this case and is not part of the record before us.

"**School health program.**—All schools * * * shall have a school health program which * * * shall provide for the organized direction and supervision of a healthful school environment, health education, and services. The program shall include and provide, within and consistent with existing school facilities, for the administration of such nursing care by certified nurse teachers, as defined in § 16–21–8, as shall be requested in writing by the attending physician of any student and authorized in writing by the parent or legal guardian of the student."

Section 16–21–8 provides:

"**Certified nurse–teacher.**—Each school system shall employ certified nurse–teacher personnel certified by the state department of elementary and secondary education * * *. The school health program as defined in § 16–21–7 shall be staffed by certified personnel only."

In support of its contention, the union relied on this Court's holding in *Cranston Teachers'*. In that case, the Cranston Teachers' Association sought review of a Regents' decision that reversed the commissioner's finding that the Cranston School Committee was "unlawfully soliciting registered nurses rather than certified nurse–teachers for employment in the Cranston school's health program." 424 A.2d at 649. On review, this Court held that §§ 16–21–7 and 16–21–8 require the exclusive employment of certified nurse–teachers in a school district's health program. *Id.* at 650.

In the case *sub judice*, the respondent school committee argued that § 16–21–7 does not require the employment of a nurse who is also a certified nurse–teacher if that nurse's sole responsibility consists of attending to the specific needs of an individual handicapped child, both inside and outside the school, on those days when the child is able to attend school, because the nurse is not functioning as part of the school health program as defined in § 16–21–7 while he or she is delivering those services. The school committee asserted that *Cranston Teachers'* is

not controlling because that case did not define the scope of a school health program, nor did it evaluate whether particular services or personnel must be provided as part of a school health program. The respondent department, arguing on behalf of the Regents, contended that the individualized nursing assistance at issue here is not encompassed by the meaning of the term "services" in § 16–21–7. The union, on the other hand, argued that even though an individual nurse renders specialized health services for a single child, those services are not separate or distinguished from the so-called services that constitute part of a school health program and, thus, those services must be performed by a certified nurse-teacher, pursuant to § 16–21–8. In support of its position, the union relied on G.L.1956 § 23–13–26, as enacted by P.L.1992, ch. 340, § 1[3] and the Rules and Regulations for School Health Programs (R 16–21SCHO, as amended February 1993), promulgated under §§ 16–21–7 and 16–21–8, as evidence of the Legislature's intent to include services to technology-dependent children as part of the school health program. Section 23–13–26 provides in pertinent part:

"**Technology-dependent children—Definitions—Caretakers' skills.**—(A) For the purposes of this section, the following definitions shall apply:

(1) *Technology-dependent children:* Children who have severe, chronic disabilities attributable to a mental or physical impairment or combination of mental and physical impairments, which disability is manifested before the person attains the age of twenty-two (22)[,] is likely to continue indefinitely, results in substantial functional limitations in three (3) or more of the following areas of major life activity:

(a) Self-care;

* * *

(2) *Medical devices or equipment:* Shall include, but not be limited to the following:

* * *

**3.** The 1996 Reenactment of the General Laws redesignated the subsections of the earlier version of § 23–13–26.

(b) Tracheostomy;

* * *

(3) *Advanced skills:* Familiarity and current experience with the following:

* * *

(d) Tracheostomy care—daily and emergency care;

* * *

(B) Certified school nurse teachers, as defined in § 16–21–8, who provide direct care for technology-dependent children, shall have advanced skills which shall include, but not be limited to those skills in subsection (A)(3) of this section.

(C) The specific guidelines for the care of technology-dependent children in schools shall be included in the rules and regulations issued jointly by the director of the department of health and the board of regents for elementary and secondary education under the provisions of U.S. Public Law 94–142 [20 U.S.C. § 1400 et seq.] and chapter 24 of title 16 as part of the school health program."

In addition, § 2.1 of the Rules and Regulations for School Health Programs describe the "school health program" as encompassing "health education, health services and environmental health," and § 109.1 of those regulations provides that

"[e]ach school system shall make provision for certified nurse teachers to implement the school health program in accordance with section 16–21–7 and section 16–21–8 of the General Laws, as amended."

Section 109.1.1 provides:

"Pursuant to the provisions of section 23–13–26 of the General Laws, certified nurse teachers who provide direct care for technology-dependent children, shall provide such care according to the guidelines found in the publication entitled 'Children Assisted by Medical Technology in Educational Settings: GUIDELINES FOR CARE,' published by Project School Care, The Children's Hospital, Boston, 1989, or current edition, and the Guidelines for Children with Special Health Care Needs in the School Setting in Rhode Island."

The union specifically contended that together § 23–13–26(C) and § 109.1.1 require that the care of technology-dependent children (a classification that includes children with tracheostomies) constitutes part of a school health program.

The issue before us, then, is whether in this particular case the assistance provided by a registered nurse is subsumed within the meaning of the term "services" in § 16–21–7. If the care is so included, it must be rendered exclusively by a certified nurse–teacher as part of the school health program, pursuant to § 16–21–8. The resolution of this question requires us to construe §§ 16–21–7 and 16–21–8.

■■■ As the final arbiter on questions of statutory construction, this Court "has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning." *Matter of Falstaff Brewing Corp.: Re Narragansett Brewery Fire,* 637 A.2d 1047, 1049 (R.I.1994). "In essence, when a statute is unambiguous, a tribunal vested with power to consider the statute should not engage in construing the statute beyond its literal meaning." *Cranston Teachers' Association,* 424 A.2d at 650. We shall abandon a literal reading of a statute only when such a reading yields an absurd result or defeats the underlying purpose of the legislation. *Matter of Falstaff Brewing Corp.,* 637 A.2d at 1050.

■■ In applying these well-settled principles of statutory construction, we begin by recognizing that specialized medical assistance is essential in this case so that a child of fragile health can attend a public school. The one-on-one nursing services were prescribed as part of the child's IEP. Neither the child's attending physician nor the child's parent requested nursing care by a certified nurse–teacher, pursuant to § 16–21–7. *See ante.* In fact, the parent of this child refused to authorize the administration of nursing care to her child by a certified nurse–teacher. Moreover, the registered nurse who was retained by the school committee on a contract basis to serve this student engaged in no instructional activities, provided no health services to any other students at the school, and rendered no other services to the War-

wick school department. Therefore, the nurse's services could not be construed as part of the "school health program" defined in §§ 16–21–7 and 16–21–8. Consequently, on the basis of the facts specific to this case, we are led to conclude that neither §§ 16–21–7 and 16–21–8 nor the applicable regulations are implicated here, and thus the services at issue may be provided by a registered nurse.

Notwithstanding our determination in this case, we refrain from modifying our holding in *Cranston Teachers'* in light of the unambiguous provisions of both the statutes [4] and the regulations, and of our interpretation of those statutes in *Cranston Teachers'.* Hence, a school health program must be implemented by certified nurse–teachers, and the services provided therein must be rendered exclusively by such personnel. We hold, however, that in respect to the case before us, the rendering of services to this child by an appropriately credentialed health-care professional who was not a certified nurse–teacher did not violate the provisions of §§ 16–21–7 and 16–21–8. Consequently, we deny the petition for certiorari, quash the writ previously issued, and affirm the Regents' decision that the medical assistance provided to this particular student, pursuant to her IEP, need not be provided by a certified nurse–teacher. The record in this case may be returned to the Regents with our opinion endorsed thereon.

---

4. In 1993, the Legislature failed to enact House bill 93–H 7128 or Senate bill 93–S 1063, submitted by the Regents. Both bills would have repealed G.L.1956 § 16–21–8 and would have allowed nursing care and other health services to be provided "by any appropriately credentialed nurse, health professional or technician," but health education would continue to be provided by "appropriately certified teaching personnel."