DECISION
Plaintiffs Gary and Jane Enos ask this Court to declare that two contiguous lots of land that they own are exempt from the merger provisions of the Town of Richmond Zoning Ordinance. Plaintiffs further ask this Court to issue a writ of mandamus to order the Town to correct its records to reflect this exemption. Defendants Kathy Damicis, in her capacity as Treasurer of the Town of Richmond, and Elizabeth J. Fournier, in her capacity as Tax Assessor of the Town of Richmond, oppose plaintiffs' requests and ask this Court to grant their motion for summary judgment.[1] For the reasons set forth in this decision, this Court will grant plaintiffs' request for declaratory relief and issue their requested writ of mandamus as they are entitled to judgment as a matter of law.
 FACTS
Plaintiffs Gary and Jane Enos are the owners of two contiguous lots of land that are located in Richmond, Rhode Island and designated as Lots 17-4 and 17-5 on Assessor's Map 1B. In 1984, Gary Enos purchased Lot 17-4 — an improved parcel of land on which was situated a residential structure. In 1986, plaintiff Gary Enos purchased the neighboring unimproved parcel of land designated as Lot 17-5. Subsequently, both plaintiffs Gary and Jane Enos became owners of these two properties.[2]
Lots 17-4 and 17-5 were originally part of the David LaRoche subdivision that was recorded in the Town of Richmond Land Evidence Records in 1976. At the time of the creation of Lots 17-4 and 17-5 and at the time of plaintiff Gary Enos' purchases of those lots, the lots met the zoning requirements, as they were each slightly in excess of one acre. In 1991, however, the Town of Richmond amended the Zoning Ordinance such that the zoning provisions relating to Lots 17-4 and 17-5 changed from a one acre minimum requirement to a three acre minimum requirement.
The 1991 Zoning Ordinance also contained a merger provision that, by its terms, was applicable "only to contiguous unimproved lots or parcels of land." See Zoning Ordinance § 18.36.020(C). In 1994, the Zoning Ordinance was amended to make the merger provision applicable to "contiguous unimproved, or improved and unimproved, substandard lots of record in the same ownership." Id. at § 18.48.010(B). The amended merger provision also provided that "[t]his merger provision shall be applicable to all lots of record except those lots of record which have been created by legal subdivision approval by the Town of Richmond" (emphasis added). Id.
In 2000, defendant Elizabeth J. Fournier, Richmond Tax Assessor, informed plaintiffs that, at the revaluation in 1991, the lots had been merged into a single lot to conform to R-3 Zoning (three acre minimum).See May 22, 2000 Letter from Elizabeth J. Fournier, Richmond Tax Assessor, to plaintiff Gary P. Enos. As a result, plaintiffs filed this action in Superior Court to ask this Court to declare the merger invalid and to issue a writ of mandamus to obtain correction of the Town's records to reflect the absence of a merger. Defendants counter that this Court should rule as a matter of law that the merger was valid and thus deny the plaintiffs' request for issuance of a writ of mandamus.
 STANDARD OF REVIEW
Under the Uniform Declaratory Judgments Act, this Court "shall have the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." R. I. Gen. Laws § 9-30-1. The purpose of the Act is "to facilitate the termination of controversies."Capital Props., Inc. v. State, 749 A.2d 1069, 1080 (R.I. 1999). "A decision to grant a remedy under the Uniform Declaratory Judgments Act is purely discretionary." Woonsocket Teachers' Guild Local Union 951, AFT v.Woonsocket School. Comm., 694 A.2d 727, 729 (R.I. 1997). A necessary predicate to the exercise of that discretion under the Act, however, is the existence of an actual justiciable controversy. See ProvidenceTeachers Union v. Napolitano, 690 A.2d 855, 856 (R.I. 1997).
 MERGER
Plaintiffs argue that Lots 17-4 and 17-5 were not merged by operation of the Zoning Ordinance in effect in 1991 or by the 1994 amendment to the Zoning Ordinance. The defendants do not appear to contest plaintiffs' assertion that there was no merger of the lots as a result of the 1991 Zoning Ordinance. Instead, the defendants contend that the lots merged pursuant to the 1994 amendment to the Zoning Ordinance.
 1991 Zoning Ordinance
The merger provision contained in the 1991 Zoning Ordinance specified that the merger provision "shall apply only to contiguous unimproved lots or parcels of land." See Zoning Ordinance § 18.36.020(C) (emphasis added). The record reveals that Lot 17-5 was an unimproved lot that was contiguous to Lot 17-4. The record further reveals, however, that there was a residential structure on Lot 17-4 prior to 1991 such that Lot 17-4 did not constitute an unimproved lot. As Lots 17-4 and 17-5 were not contiguous unimproved lots, therefore, the merger provision contained in the 1991 Zoning Ordinance did not operate to merge the lots.
 1994 Zoning Ordinance
In 1994, the merger provision contained in the 1991 Zoning Ordinance was amended to provide in pertinent part as follows:
 The merger of contiguous unimproved, or improved and — being an unimproved substandard lot contiguous to an improved substandard lot held in the same ownership — unimproved, substandard lots of record in the same ownership to create dimensionally conforming lots or to reduce the extent of dimensional nonconformance shall take place at the effective date of adoption or amendment of this ordinance . . . This merger provision shall be applicable to all lots of record except those lots of record which have been created by legal subdivision approval by the Town of Richmond.
Id. at § 18.48.010(B) (emphasis added). Thus, pursuant to § 18.48.010(B), Lot 17-4 (an improved substandard lot owned by plaintiffs) merged with Lot 17-5 (a contiguous unimproved substandard lot owned by plaintiffs) unless they constituted "lots of record which have been created by legal subdivision approval by the Town of Richmond."
The parties agree that Lots 17-4 and 17-5 were created by the David LaRoche subdivision that was recorded in 1976. They further agree that the subdivision regulations in effect at the time of the creation of the David LaRoche subdivision defined "subdivision" as follows:
 The division of a lot, tract or parcel of land into two (2) or more lots, tracts, parcels or other divisions of land for sale, lease, or other conveyance, or for development, simultaneously or at separate times.
 . . . .
 Division of a lot, tract or parcel shall not be subject to these regulations if each lot, tract or parcel resulting from said subdivision meets all of the following conditions: a) An area and dimensions at least equal to that required by the Subdivision Regulations and/or Zoning Ordinance applicable to the land, whichever is the greater; b) Frontage on an existing street which has been dedicated to the public and accepted by the town, provided said frontage meets the minimum requirements of front lot lines according to the Zoning Ordinance or Subdivision Regulations; c) Frontage at the minimum setback or building line which is not less than seventy-five percent (75%) of that required at the front lot line or street line by the Zoning Ordinance and/or Subdivision Regulations applicable to the land, whichever is greater; and d) Provision is made for access to any area isolated from frontage on an existing public street by said division, by reservation of outlots or designation of a mapped street as provided by Chapter 45-23.1 of the General Laws of Rhode Island as amended.
See Richmond Subdivision Regulations, Art.C(1) (March 23, 1976) (the "Subdivision Regulations"). The parties also appear to be in agreement that the David LaRoche subdivision met the four above-stated criteria to except it from subdivision regulation and thus, at the time of its creation, was not subject to the Subdivision Regulations.[3]
Plaintiffs argue that the David LaRoche subdivision was created pursuant to legal subdivision approval by the Town of Richmond in that the David LaRoche subdivision met the four specified conditions and thus was exempted from going through the approval procedure contained in the Subdivision Regulations. The defendants counter, however, that the phrase, "legal subdivision approval by the Town of Richmond," requires some type of affirmative application or petition to a town body for subdivision approval that is considered by the town and granted. Thus, the defendants contend that since the David LaRoche subdivision was exempted from the Subdivision Regulations and there was never any affirmative application or petition to a municipal body for approval of the David LaRoche subdivision, it did not receive "legal subdivision approval by the Town of Richmond," as required to satisfy the exemption to the merger provision of the Zoning Ordinance.
As a threshold matter, therefore, this Court must interpret the meaning of the phrase "lots of record which have been created by legal subdivision approval by the Town of Richmond," as contained within the merger provision of the Zoning Ordinance. The Court's primary task in interpreting an ordinance "is to attribute to the enactment the meaning most consistent with its policies . . ., by viewing the [ordinance] in light of the circumstances that motivated its [enactment]." FalstaffBrewing Corp., 637 A.2d 1047, 1050 (R.I. 1994); see also Mongony v.Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (applying the precepts of statutory interpretation to the construction of an ordinance). Furthermore, this Court is "required to resolve all doubts and ambiguities contained in the zoning laws in favor of the landowner because these regulations are in derogation of the property owner's common law right to use [its] property as [it] wishes." Denomme v.Mowry, 557 A.2d 1229, 1231 (R.I. 1989). This Court is also mindful that "in the instance of uncertainty in the construction or application of any section of the ordinance, the ordinance shall be construed in a manner that will further the implementation of, and not be contrary to, the goals and policies and applicable elements of the comprehensive plan." R. I. Gen. Laws § 45-24-34(a).
With the aforementioned principles in mind, this Court finds that by exempting from the merger provision those lots that were created by legal subdivision approval by the Town of Richmond, the intent was to exempt from the merger provisions any lots of record that were created by legal subdivision. This Court is mindful of defendants' argument that only those subdivisions that have received affirmative subdivision approval by the Town are exempted from the merger provision because only those subdivisions have been subject to analysis and review by the Planning Board to insure the subdivision's conformity with health, safety, and welfare standards set forth in the Zoning Ordinance and Comprehensive Plan. This Court notes, however, that the merger provision does not contain any specification as to the type of approval that is required. Furthermore, the relevant Subdivision Regulations included both (1) a provision allowing those subdivisions that met specific conditions to bypass the approval process contained in the Subdivision Regulations, and (2) a stated purpose of promoting "the public health, safety, morals and general welfare." See Richmond Subdivision Regulations, Article A. The Town, by including the provision that subdivisions that met certain conditions were exempted from the Subdivision Regulations, determined that there was no need for any further review of such subdivisions and that there was no need for those subdivisions to go through the approval process delineated in the Subdivision Regulations. Indeed, had the developer of the David LaRoche subdivision sought affirmative subdivision approval from the Town at the time of the creation of the subdivision, as the defendants contend would have been required to make the subdivision legal and exempt from the 1994 merger provision, the Town, pursuant to the applicable Subdivision Regulations, would have been required to grant approval as a matter of law. Given the stated purpose of the Subdivision Regulations to promote "the public health, safety, morals and general welfare," the Town must have determined that subdivisions which met the four conditions for exemption from the Subdivision Regulations conformed to the health, safety, and welfare standards set forth by the Town.
Furthermore, this Court finds that by including in the Subdivision Regulations the provision that exempted from the Subdivision Regulations those subdivisions that met the four conditions, the Town automatically approved such subdivisions. By the very language of the Subdivision Regulations, such subdivisions were legal. Thus, since the David LaRoche subdivision met the four conditions, this Court finds that Lots 17-4 and 17-5 were created by legal subdivision approval by the Town. Hence, this Court declares that Lots 17-4 and 17-5 are exempt from the merger provision delineated in § 18.48.010.
This Court further notes that the Subdivision Regulations, as amended in 1982, specified that "[e]ach subdivision of lots of land described, plotted, or laid out on existing town or state streets or roads on maps or plans recorded or filed in the office of the Town Clerk of the Town of Richmond before the effective date of these Revised Regulations, if valid at the time of their recording, is validated." See Richmond Subdivision Regulations, Art. J (March 23, 1982). Thus, since the David LaRoche subdivision was valid at the time of its recording, the Town, via the 1982 Subdivision Regulations, explicitly validated that subdivision.
Finally, this Court's decision comports with the determination of the Zoning and Building Official and Town Planner that plaintiffs Gary and Jane Enos "have title to two separate lots of record, namely Assessor's Lot 17-4 and Assessor's Lot 17-5." (September 7, 2001 Letter signed by Loren Gengarella, Town of Richmond Zoning Building Official; George Russell, Town of Richmond Town Planner; and Richard A. Greene, P.L.S.) Our Supreme Court has held that although this Court should not give blind allegiance to the decisions of local zoning and building officials, "deference should be paid to a determination by the building inspector."New England. Expedition-Providence v. City of Providence, 773 A.2d 259, 263 (R.I. 2001). In the instant case, this Court finds that the Zoning and Building Official, as well as the Town Planner, properly determined that Lots 17-4 and 17-5 did not merge but rather are two separate lots.
 WRIT OF MANDAMUS
Plaintiffs have asked this Court to issue a writ of mandamus. Plaintiffs seek through their application for this writ to require the Town to correct its records to reflect that Lots 17-4 and 17-5 have not merged but instead are exempt from the merger provision of the Zoning Ordinance.
Under Rhode Island law, it is well settled that a writ of mandamus is appropriate when the duty to be enforced demands no special discretion, judgment or skill. P.J.C. Realty v. Barry, 811 A.2d 1202, 1205 (R.I. 2002). Furthermore, a writ of mandamus should issue only when "(1) the party petitioning for such an extraordinary remedy has shown a clear legal right to obtain the relief sought by the writ; (2) the respondent has a ministerial legal duty to perform the requested act without discretion to refuse; and (3) the petitioner possesses no adequate remedy at law."Providence Teachers Union Local 958 v. Providence School. Bd.,748 A.2d 270, 272 (R.I. 2000).
In the instant case, the pertinent Zoning Ordinance provides that "contiguous lots[4] of record at the effective date of adoption or amendment of the ordinance codified in this title, notwithstanding the failure of that lot or those lots to meet the dimensional and/or quantitative requirements, and/or road frontage or other access requirements, applicable in the districts as set forth in said ordinance, and lot merger, where applicable, has been completed, shall beconsidered a lot or lots of record." See Richmond Zoning Ordinance § 18.48.010(A) (emphasis added). As this Court has determined that merger does not apply to Lots 17-4 and 17-5, the Town must consider Lots 17-4 and 17-5 as individual lots of record. Plaintiffs, therefore, are entitled to have the Town's records reflect this fact. Accordingly, this Court finds that plaintiffs are entitled, as a matter of law, to issuance of a writ of mandamus. The defendants are ordered to perform the ministerial act of correcting or facilitating the correction of the Town's records to reflect that Lots 17-4 and 17-5 are separate individual lots of record that are exempt from the merger provisions of the Zoning Ordinance.
 CONCLUSION
For the reasons set forth above, this Court grants the plaintiffs' motion for summary judgment and denies the defendants' motion for summary judgment. This Court grants plaintiffs' request for declaratory judgment and declares that Lots 17-4 and 17-5 have not been merged pursuant to the Richmond Zoning Ordinance in effect in 1991 or pursuant to the 1994 amendment to the Richmond Zoning Ordinance that has remained essentially unchanged since that date. Thus, as of the present date, Lots 17-4 and 17-5 have not merged, but rather are two separate lots. Furthermore, this Court grants plaintiffs' request for a writ of mandamus and orders the defendants to correct or to facilitate the correction of the Town's records to indicate that Lots 17-4 and 17-5 are two separate individual lots of record that are exempt from the merger provisions of the Richmond Zoning Ordinance.
Counsel shall confer and submit forthwith for entry an agreed upon form of order and judgment consistent with this decision.
[1] Plaintiffs initially filed a motion for declaratory judgment. Subsequently, the Superior Court, via the motion calendar justice, informed the parties that plaintiffs' request for declaratory relief would be treated as a motion for summary judgment. Defendants thereafter filed a cross motion for summary judgment. Accordingly, this Court will decide this issue as a matter of law and render a declaration as to the rights of the parties.
[2] It is unclear when ownership of Lots 17-4 and 17-5 changed from plaintiff Gary Enos to plaintiffs Gary and Jane Enos. The parties have not set forth any arguments, however, that would make such a determination relevant to this decision.
[3] It is not clear to this Court that this provision was contained in the Richmond Subdivision Regulations in 1976, given that the definition of subdivision in the enabling act, R. I. Gen. Laws. § 45-23-1, was not amended to include this provision until May 5, 1979. See P. L. 1979, ch. 223 § 1. Prior to May of 1979, the enabling act defined a subdivision as "the division of a lot, tract or parcel of land into two (2) or more lots, sites or other divisions of land in such a manner as torequire provision for a street, for the purpose, whether immediate or future, of sale or of building development tracts, parcels, or other divisions of land for sale, lease or other conveyance, or for development, simultaneously or at separate times." See R. I. Gen. Laws. § 45-23-1 (emphasis added). This Court could not locate a version of the Richmond Subdivision Regulations that defined subdivision in the manner described by the parties. Rather, the parties presented this Court with a version of the Richmond Subdivision Regulations that was designated (in handwriting) as the 1976 version and contained the definition of subdivision and the exceptions included above in the text of this decision.
Even if, in 1976, the applicable definition of subdivision was the 1976 enabling act definition, and thus subdivisions under the jurisdiction of the planning commission required provision for a street, the record reflects that the David LaRoche subdivision did not require provision for a street as the lots fronted on Arcadia Road. Thus, even under the 1976 enabling act definition of subdivision, the David LaRoche subdivision still would be exempt from the Subdivision Regulations. See, e.g., Weaverv. United Congregational Church, 120 R.I. 419, 422 (R.I. 1978) (holding that where lots front on an existing street, the proposed subdivision does "not require provision for a street, and would therefore not require approval by the board in its capacity as plan commission"). Hence, the David LaRoche subdivision would have been automatically approved as it would not have been required to go through the approval process delineated in the Subdivision Regulations. Additionally, the 1982 Zoning Ordinance would have further validated the David LaRoche subdivision.
[4] A "lot" is either "A. The basic development unit for determining the area, depth and other dimensional regulations of a parcel of land; or B. A parcel of land whose boundaries have been established by some legal instrument such as a recorded deed or recorded map and which is recognized as a separate legal entity for purposes of transfer of title."See Richmond Zoning Ordinance § 18.08.420