April 30, 2024

**Supreme Court**

No. 2022-302-C.A.
(WJ 20-2497)

(Dissent begins on Page 12)

In re C.R.                              :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re C.R.                                      :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The genesis for this appeal arises from a fatal motor-vehicle incident in which both the decedent and the driver—a juvenile—were traveling in the same vehicle.  As a result, a delinquency petition was filed in the Family Court against the juvenile-driver, who later entered a plea of nolo contendere to two charges of driving so as to endanger, resulting in death. *See* G.L. 1956 § 31-27-1.  After the nolo contendere plea, the decedent's parents, who were present for the plea, filed a motion in the Family Court seeking access to the transcript of the proceeding where the juvenile-driver was certified and sentenced. The Family Court denied the motion and the decedent's parents, although not parties to the case, filed this appeal.

- 1 -

This case came before the Supreme Court on January 23, 2024, pursuant to an order directing the parties and the decedent's parents to show cause why the issues raised in this appeal should not be summarily decided. After examining the memoranda and arguments presented, we conclude that cause has not been shown and proceed to decide the appeal at this time. For the reasons set forth in this opinion, we affirm the order of the Family Court.

## Factual Background

On or about August 9, 2020, Jackson Panus (Panus) was a passenger in a motor vehicle driven by C.R. As a result of a motor-vehicle collision, Panus tragically perished. At the time, C.R. was sixteen years old, and in due course, a delinquency petition was filed in Family Court against C.R. alleging five charges stemming from the fatal motor-vehicle incident. Pursuant to the nolo contendere plea, C.R. was adjudicated to be delinquent with respect to two charges of driving so as to endanger, resulting in death. *See* § 31-27-1. The remaining three charges were dismissed. On September 28, 2021, the Family Court trial justice assigned to the delinquency petition (trial justice) certified C.R. pursuant to G.L. 1956

§§ 14-1-7.2 and 14-1-7.3(a),[1] and sentenced C.R.  In accordance with § 14-1-30,[2]

the September 28, 2021 proceeding was closed to the public, but Panus's parents,

Stephen and Kellie Panus (the movants), as well as their legal counsel, were

---

[1] General Laws 1956 § 14-1-7.3(a) provides, in pertinent part, that:

> "Upon a finding by the court that the child is subject to certification pursuant to § 14-1-7.2, the court shall afford the child a right to a jury trial, and upon conviction for the offense charged, the court shall sentence the child in accordance with one of the following alternatives:
>
> > "(1) Impose a sentence upon the child to the training school for youth until the time that the child attains the age of nineteen (19) years;
> >
> > "(2) Impose a sentence upon the child for a period in excess of the child's nineteenth birthday to the adult correctional institutions, with the period of the child's minority to be served in the training school for youth in a facility to be designated by the court. However, the sentence shall not exceed the maximum sentence provided for by statute for conviction of the offense."

[2] Section 14-1-30 provides:

> "In the hearing of any case, the general public shall be excluded; only an attorney or attorneys, selected by the parents or guardian of a child to represent the child, may attend, and only those other persons shall be admitted who have a direct interest in the case, and as the justice may direct. All cases involving children shall be heard separately and apart from the trial of cases against adults."

permitted to attend. The proceedings were transcribed (September 28, 2021 transcript).

According to the movants, following the September 28, 2021 proceeding, and in anticipation of filing a civil action against C.R., counsel for the movants requested the September 28, 2021 transcript from the stenographer. The movants aver that the stenographer directed counsel to the trial justice and the trial justice instructed counsel to file a motion seeking access to the September 28, 2021 transcript (motion). The movants indicate that several days later, on October 1, 2021, they filed the motion. As noted, the motion was filed in the delinquency petition case to which the movants were not parties. On October 8, 2021, Stephen Panus, in his individual capacity and in his capacity as Administrator of the Estate of Jackson Panus, and Kellie Panus, in her individual capacity, filed a civil action in Providence County Superior Court against C.R. and her parent. The civil action sought damages as a result of Panus's death.

On or about August 5, 2022, the motion was heard by the Chief Judge of the Family Court (Chief Judge). No transcript has been provided for the August 5, 2022 hearing and we are advised that no record of this proceeding exists for this Court to review. The movants subsequently filed a post-hearing memorandum in support of their position.

On September 14, 2022, in a written decision, the Chief Judge denied the motion. In so doing, the Chief Judge considered § 14-1-66, as well as *Matter of Falstaff Brewing Corporation Re: Narragansett Brewery Fire*, 637 A.2d 1047 (R.I. 1994), and noted that both the statute and our precedent imposed a "good cause" standard. Thereafter, the Chief Judge observed that:

> "[T]he movants state that 'the request for the transcript in this case is made specifically and solely for the purpose of aiding in the prosecution of the civil action currently pending against the juvenile and her parent to recover for damages sustained as a result of the crime.' * * * However, movants make no showing of how, without the transcript, they would not be able to seek restitution for their damages. Indeed, the movants and their attorneys were present during the proceedings for which they request a transcript. Although a transcript under oath may be a useful tool on cross-examination, the transcript in question simply is not a *sin[e] qu[a] non* for movants to obtain relief."

After considering the purpose supporting the confidentiality of juvenile proceedings, the Chief Judge concluded that "[o]n balance, the interests of the state in protecting the confidentiality of juvenile justice proceedings outweigh the interests of the movants." Accordingly, the Chief Judge determined that "[g]ood cause has not been shown" and denied the motion. The movants filed an appeal. We affirm.

## Analysis

As a threshold matter, we express some doubt concerning whether the movants had standing to file the motion *ab initio* and whether this appeal is properly before this Court. The movants were not parties to the delinquency petition and sought neither to intervene nor to file a separate civil action seeking access to the September 28, 2021 transcript. Further complicating the issue of justiciability, we have before us an appeal from the Chief Judge's order denying the motion. *But see Falstaff Brewing Corporation*, 637 A.2d at 1048-49 (reviewing order granting motion to obtain juvenile police records sought pursuant to § 14-1-66 through petition for a writ of certiorari). These issues were raised for the first time after the prebriefing conference and addressed in supplemental memoranda.

After careful review, we elect to bypass these procedural issues because "an alternative substantive ruling provides a simpler and more direct resolution of an appeal." *Sinapi v. Rhode Island Board of Bar Examiners*, 910 F.3d 544, 550 (1st Cir. 2018). This approach is "particularly appropriate in cases like this one where the merits issues are 'foreordained' and 'do not create new precedent,'" and where "the outcome is the same either way." *Id.* (brackets omitted). Accordingly, we proceed to the merits.

This Court has recognized that "[t]he principle of an open trial has as its goals the protection of a defendant against possible prosecutorial or judicial abuse."

*Edward A. Sherman Publishing Company v. Goldberg*, 443 A.2d 1252, 1258 (R.I. 1982). "The interests of the juvenile, however, are most often best served by anonymity and confidentiality." *Id.* Indeed, "[t]he overarching purpose of the statutory scheme relating to juvenile justice is to rehabilitate miscreants who have not reached the age of majority." *In re Harrison*, 992 A.2d 990, 994 (R.I. 2010). In so doing, we have explained that "[t]he policy of confidentiality that protects juveniles from future 'civil disabilities' and from the social and economic stigmatization that accompany criminal convictions is concededly an important part of the juvenile justice system." *Falstaff Brewing Corporation*, 637 A.2d at 1051; *see also In re Richard A.*, 946 A.2d 204, 210 (R.I. 2008) ("The primary goals of the juvenile-justice system are protection, rehabilitation, and treatment of the offender, whereas the criminal system seeks to punish the offender."). We deem this protection critical, particularly in the world of social media. With these competing interests in mind, the General Assembly enacted § 14-1-66.

Section 14-1-66 provides, in relevant part:

> "Upon written motion by the victim of a crime or his or her attorney, *the family court may, in its discretion, and upon good cause shown*, divulge the name and address of the juvenile accused of committing the crime solely for the purpose of allowing the victim to commence a civil action against the juvenile and/or his or her parents to recover for damages sustained as a result of the crime[.]" (Emphasis added.)

In *Falstaff*, after two juveniles had been arrested and charged with multiple counts for their involvement in a fire at the former Narragansett Brewery complex, the Falstaff Brewing Corporation obtained the release of the two juveniles' names pursuant to § 14-1-66. *See Falstaff Brewing Corporation*, 637 A.2d at 1048. After obtaining their names, Falstaff filed a civil action in Superior Court against the juveniles and their parents, claiming damages as a result of the fire. *Id.* at 1048-49. Thereafter, Falstaff served a *subpoena duces tecum* upon the Cranston police department seeking the police records relating to the arrest and charges against the minors. *Id.* at 1049. The Superior Court quashed the *subpoena duces tecum* and granted the petitioners' motion for a protective order, "'without prejudice to any right that Falstaff may have to petition the Rhode Island Family Court for access to' the records." *Id.* (brackets omitted). Falstaff then filed a motion in the Family Court seeking access to the police records, which was granted. *Id.* This Court issued a writ of certiorari. *Id.*

We observed that "[o]ur review by writ of certiorari is limited to examining the record to determine if an error of law has been committed." *Falstaff Brewing Corporation*, 637 A.2d at 1049. Thus, we stressed that "[t]he sole issue on appeal is a question of law: Does § 14-1-66 authorize the release of a juvenile's police records to the victim of a crime?" *Id.* Although the plain language of § 14-1-66 limited disclosure to "the name and address of the juvenile accused of committing the

crime," this Court nonetheless declared that it was "unreasonable to conclude that the General Assembly intended to allow victims to bring actions to recover damages but then denied them the tools for obtaining that relief." *Id.* at 1050. With respect to the issue presented before this Court, our conclusion in *Falstaff* is particularly enlightening:

> "We are of the opinion that the legislative intent to allow victims, pursuant to § 14-1-66, to pursue civil actions against juveniles is clear and cannot be ignored. *Where the Family Court, in exercise of its discretion, determines as it did in the case before us that good cause has been shown to warrant release of a juvenile's name to a victim for purposes of seeking restitution*, we find that § 14-1-66 also authorizes the review of the juvenile's police record by the victim, though not by the general public, as it pertains to the act alleged to have caused damage to the victim." *Id.* at 1052 (emphasis added).

The movants suggest that our decision in *Falstaff* to allow the release of police records pursuant to § 14-1-66 should be applied in this case to require the release of the September 28, 2021 transcript.

This Court need not reach the issue presented by the movants because the record is clear that the threshold requirement recognized in *Falstaff* has not been satisfied. Although in *Falstaff* we concluded that the police records relating to the juvenile offenders should be disclosed to the Falstaff Brewing Corporation, our conclusion was expressly premised upon a showing of "good cause" as determined by a justice of the Family Court in the exercise of statutorily vested discretion. *See*

- 9 -

*Falstaff Brewing Corporation*, 637 A.2d at 1052. We explained that: "Where the Family Court, *in exercise of its discretion, determines * * * that good cause has been shown to warrant release of a juvenile's name to a victim for purposes of seeking restitution*, we find that § 14-1-66 also authorizes the review of the juvenile's police record by the victim * * * as it pertains to the act alleged to have caused damage to the victim." *Id.* (emphasis added).

Here, after considering the movants' arguments, the Chief Judge concluded that "[g]ood cause has not been shown." He further observed that the movants requested the September 28, 2021 transcript "specifically and solely for the purpose of aiding in the prosecution of the civil action currently pending against the juvenile and her parent to recover for damages sustained as a result of the crime." Despite the movants' asserted purpose, the Chief Judge concluded that the movants made "no showing of how, without the transcript, they would not be able to seek restitution for their damages."

Unlike *Falstaff*, in which the reports at issue concerned the details of the police department's investigation that presumably were unknown to the victim, in this case it is undisputed that the movants and their legal counsel were present for the September 28, 2021 proceeding. Our review, likewise, finds a dearth of evidence or argument supporting a "good cause" determination that was presented to the Chief Judge. Additionally, we are advised that in conjunction with the civil action, C.R.

was deposed for multiple hours, during which C.R. was likely questioned (or could have been questioned) concerning the events that took place during the plea proceeding.[3]  Although "[i]t is unreasonable to conclude that the General Assembly intended to allow victims to bring actions to recover damages but then denied them the tools for obtaining that relief," *Falstaff Brewing Corporation*, 637 A.2d at 1050, the movants before us failed to meet the standard for production of confidential juvenile records of Family Court proceedings.

While the movants submitted at oral argument that the September 28, 2021 transcript might prove helpful in the event that the civil action proceeds to trial and in the event that C.R. testifies in a manner inconsistent with the September 28, 2021 proceeding, this attempt at demonstrating "good cause" can only be described as speculative, particularly considering C.R.'s lengthy deposition.  Moreover, this argument was rejected by the Chief Judge.  We also pause to note that no claim has been made to this Court that C.R. provided deposition testimony that was inconsistent with the September 28, 2021 proceeding.

We disagree with the dissent's opinion that good cause for the production of the transcript has been shown in what is certainly a tragic and emotional matter for

---

[3] It is also our understanding that the civil action had been assigned to the Providence County Superior Court trial calendar, and in so doing, the plaintiffs in that matter, through their legal counsel, represented that discovery was substantially complete and that they were ready to proceed to trial.

those involved. However, our role is not to substitute our opinion for the judgment of the Chief Judge, but rather to determine whether the Chief Judge abused his discretion in denying the motion. On the record before us, the Chief Judge exercised the statutory discretion vested in the justices of the Family Court pursuant to § 14-1-66 and concluded that "[g]ood cause has not been shown." We perceive no abuse of discretion with this determination, nor are we aware of any legal authority to support the dissent's waiver argument, which would render § 14-1-66 nugatory.

## Conclusion

For the reasons set forth herein, we affirm the Family Court's order. The papers in this case are remanded to the Family Court.

**Justice Robinson, dissenting.** I respectfully dissent. In my view, the movants (*viz.*, Stephen and Kellie Panus, the parents of the young man who died in the tragic August 2020 collision in which the motor vehicle driven by C.R. was involved) clearly satisfied the "good cause" standard that is the controlling standard with respect to this rather unusual case. I need not go on at great length to explain my rather strong opinion that, given the provisions of the pertinent statute (G.L. 1956 § 14-1-66) and especially given this Court's long-standing precedent construing that

statute,[1] the movants very definitely satisfied the "good cause" standard[2] and were entitled to be provided with a transcript of the sentencing proceeding that was held in the Family Court on September 28, 2021 with respect to C.R.

It is undisputed that the movants and their attorney were permitted to attend and did in fact attend that sentencing proceeding, which was transcribed by a court reporter. Moreover, no court order has ever prohibited the movants or their attorney from revealing what transpired during that proceeding (and there is no indication whatsoever that they have ever done so). Quite frankly and with all due respect, I simply cannot agree with the Chief Judge's conclusion that "[o]n balance, the interests of the state in protecting the confidentiality of juvenile justice proceedings outweigh the interests of the movants." In my judgment, the confidentiality of the sentencing proceeding for C.R. was waived *pro tanto* by the fact that the movants and their attorney were permitted to attend that proceeding. Since they are not subject to any sort of prior restraint or "gag order," they would be completely free to testify to the best of their recollection at the eventual civil trial about the

---

[1] The most directly relevant precedent is, of course, this Court's unanimous opinion in *Matter of Falstaff Brewing Corporation Re: Narragansett Brewery Fire*, 637 A.2d 1047 (R.I. 1994).

[2] I unhesitatingly agree with the majority that "good cause" should be the operative standard with respect to the instant case. *See Falstaff Brewing Corporation*, 637 A.2d at 1052.

statements that C.R. made under oath at the sentencing proceeding if she were to testify at trial to a material fact in a manner that differed significantly from her testimony at the sentencing proceeding.[3] But how much more potent in that eventuality would be an official transcript stating in plain English *exactly* what C.R. had testified to at the sentencing proceeding.

For that reason, I am perplexed by the following sentence from the Chief Judge's decision (a sentence that is also quoted in the majority opinion):

> "Although a transcript under oath may be a useful tool on cross-examination, the transcript in question simply is not a [*sine qua non*[4]] for movants to obtain relief."

In my judgment, allowing plaintiffs in the tragic underlying civil case to have access to such a "useful tool" quite definitely constitutes good cause.

While having the transcript may not constitute a *sine qua non* for plaintiffs in the underlying civil case, the fact that it "may be a useful tool" seems to me to clearly

---

[3]     There is no reason to believe that the transcript would be used for any purpose other than cross-examination in the civil trial if (and only if) that became necessary. Indeed, the Chief Judge specifically noted in his decision that "the movants state that the request for the transcript in this case is made specifically and solely for the purpose of aiding in the prosecution of the civil action currently pending against the juvenile and her parent to recover for damages sustained as a result of the crime * * *." (Internal quotation marks omitted.)

[4]     This Latin expression is spelled differently in the record. I have chosen to use the spelling used in Black's Law Dictionary. Black's Law Dictionary 1665 (11th ed. 2019).

constitute "good cause" in accordance with the statute and under *Matter of Falstaff Brewing Corporation Re: Narragansett Brewery Fire*, 637 A.2d 1047 (R.I. 1994). It is a useful tool that any wise litigator would want to have in his or her toolbox in case it should be needed. To employ a rough analogy and with no intention of trivializing the importance of the issue before us, a major league baseball manager might hope that the starting pitcher would "go the distance," but that same manager would surely be pleased to know that a tried and true relief pitcher was in the bullpen, ready to be called upon if necessary. I consider the transcript at issue to be of similar potential usefulness.

I acknowledge that the decision as to whether there is "good cause" justifying the release of the transcript to the movants is discretionary in nature. However, as this Court has noted on multiple occasions, the discretion that is accorded to the *nisi prius* court as to many matters is not unbridled in nature. *See, e.g.*, *State v. Coelho*, 454 A.2d 241, 246 (R.I. 1982); *Hartman v. Carter*, 121 R.I. 1, 5, 393 A.2d 1102, 1105 (1978). While I have genuine respect for my colleagues on this Court and for the Chief Judge who decided that the transcript should not be provided to the movants in this case, I am unable to agree with their judgment in this matter. I have long been influenced by the often-quoted observation of the late Justice Thomas Kelleher to the effect that "[t]he term 'discretion' imports action taken in the light of reason as applied to all the facts and with a view to the rights of all the parties to

- 15 -

the action while having regard for what is right and equitable under the circumstances and the law." *Hartman*, 121 R.I. at 5, 393 A.2d at 1105. In my considered judgment, providing the transcript at issue to the movants in this case pursuant to the agreed-upon conditions would be "right and equitable under the circumstances and the law." *Id.*

For these reasons, I very respectfully dissent.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re C.R. |
| **Case Number** | No. 2022-302-C.A.<br>(WJ 20-2497) |
| **Date Opinion Filed** | April 30, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Newport County Family Court |
| **Judicial Officer from Lower Court** | Chief Judge Michael B. Forte |
| **Attorney(s) on Appeal** | For Appellants:<br><br>Anthony M. Traini, Esq. |
| | For Appellee:<br><br>William J. Murphy, Esq. |