# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

FILED: March 6, 2018

————

No. 09-1038

AMERICAN PETROLEUM INSTITUTE,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

AMERICAN CHEMISTRY COUNCIL, ET AL.,
INTERVENORS

————

Consolidated with 15-1083, 15-1085, 15-1088, 15-1089,
15-1094

————

On Petitions for Panel Rehearing

————

Before: TATEL and KAVANAUGH, *Circuit Judges*, and
WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM:  In 2015, the Environmental Protection
Agency promulgated a final rule that defined when certain
hazardous materials were deemed discarded—as opposed to

legitimately recycled—and therefore subject to EPA's oversight. Environmental and Industry Petitioners challenged portions of the rule. In our 2017 decision, *API v. EPA*, 862 F.3d 50 (D.C. Cir. 2017), we upheld some aspects of the rule and vacated others. In so doing, we invited the parties to consider briefing whether one of the vacated components should instead be severed and affirmed. *Id*. at 72. The parties accepted that invitation, filing petitions for rehearing that address that question and a number of others. Having reviewed the petitions, we now modify our 2017 decision in three ways: (1) we sever and affirm EPA's removal of the spent catalyst bar from the vacated portions of the "Verified Recycler Exclusion"; (2) we vacate Factor 4 in its entirety; and (3) we clarify the regulatory regime that replaces the now-vacated Factor 4. All other aspects of the petitions for rehearing are denied.

\* \* \*

Our 2017 opinion provides the relevant statutory and regulatory background. *Id*. at 55–57. We offer here only what is necessary to make sense of our three modifications to that decision.

In 2008, pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k, EPA promulgated a rule that excluded certain hazardous secondary materials from the definition of solid waste—and therefore beyond the reach of EPA's RCRA authority—in two circumstances. *Revisions to the Definition of Solid Waste*, 73 Fed. Reg. 64,668, 64,669/3–70/1–2 (Oct. 30, 2008). The exclusion applicable depended on the type of entity undertaking the recycling: the "Generator-Controlled Exclusion" applied when the company producing the material performed the recycling itself and the "Transfer-Based Exclusion" applied when the generator sent the materials to an

off-site recycler (which the rules required the generator to audit to ensure that the transferee had in place adequate recycling procedures). *Id.* As a prerequisite for either exclusion, the materials had to be recycled legitimately, as determined by a set of "legitimacy factors" set by EPA. *Id.* at 64,700/2.

In 2015, while challenges to the 2008 rule were pending in this court after having been held in abeyance in light of EPA's issuance of a notice of proposed rulemaking on the same subject, the agency issued revisions to the rule. *Definition of Solid Waste*, 80 Fed. Reg. 1,694 (Jan. 13, 2015). Four of those changes are pertinent to the petitions for rehearing. First, EPA changed the content and application of the four legitimacy factors. *Id.* at 1,719/3–20/1. Second, EPA redefined and made more stringent the "containment" standard, a preexisting requirement recyclers had to satisfy to qualify for the Generator-Controlled and Transfer-Based Exclusions. *Id.* at 1,704/1–3, 1,738/1. Third, EPA allowed spent petroleum refinery catalysts to qualify for these solid waste exclusions. *Id.* at 1,737/3–38/1. Fourth, EPA replaced the Transfer-Based Exclusion with the Verified Recycler Exclusion. *Id.* at 1,695/2.

Our 2017 decision vacated the Verified Recycler Exclusion and reinstated the Transfer-Based Exclusion. *API*, 862 F.3d at 75. We explained that, as a result, spent catalysts would once again be disqualified from that exclusion's ambit "subject . . . to such arguments as parties may raise supporting a different outcome." *Id.* We also vacated the revised Factor 4 "insofar as it applies to all hazardous secondary materials via § 261.2(g)." *Id.*

\* \* \*

We conclude that three aspects of the petitions for rehearing warrant revision of our 2017 decision.

*Spent Petroleum Catalysts*.  In response to our invitation, *id*. at 72, 75, API asks us to undo the disqualifier for spent catalysts.  We had been persuaded by EPA's response to comments regarding the proposed 2015 rule that, in removing the disqualification, EPA relied in part on the Verified Recycler Exclusion.  See *id*. at 72; see also EPA, *Revisions to the Definition of Solid Waste Final Rule Response to Comments Document* (Dec. 10, 2014) ("*Comments Document*").  In that document, EPA had said:

> [U]nder the contained standard for both the generator-controlled exclusion and the verified recycler exclusion, any hazardous secondary material that poses a risk of fire or explosion must have that risk addressed in order to ensure that the material is legitimately recycled and not discarded.

*Comments Document* at 266.  We then explained that we accordingly harbored doubts that EPA would have altered its treatment of spent catalysts absent the Verified Recycler Exclusion.  *API*, 862 F.3d at 72.  Review of the petitions for rehearing and the *Comments Document* dissipates such doubts.

The commenters in the rulemaking were split on spent catalysts, but among those arguing for relaxation of the ban was one asserting that, as a factual matter, catalysts simply are not as dangerous as EPA thought:  "The commenter stated that in the experience of their members, the catalysts sometimes have self-heating properties, but rarely are pyrophoric or otherwise exhibit the RCRA characteristic of ignitability."  *Comments Document* at 263.

EPA did not agree:

However, EPA does not support commenters' claim that spent petroleum catalysts are 'rarely' pyrophoric as a

reason for the exclusion; under the contained standard for both the generator-controlled exclusion and the verified recycler exclusion, any hazardous secondary material that poses a risk of fire or explosion must have that risk addressed in order to ensure that the material is legitimately recycled and not discarded.

*Id*. at 266. The clause following the semi-colon in that marathon sentence is, of course, the language quoted above that originally gave us pause.

But EPA agreed with those commenters who thought a unitary regulatory scheme should govern spent catalysts and that "spent petroleum catalysts sent for recycling should be eligible" for the Generator-Controlled and Verified Recycler Exclusions. *Id*. at 265. As justification, EPA pointed to the fact that the "proposed contained standard" sufficiently "addresses the risk of fires and explosions" and therefore "the pyrophoric properties of the spent petroleum catalysts." *Id*. at 266. One additional virtue of EPA's approach, it said, was that the containment standard gets at the risk of fire for any hazardous secondary material instead of singling out catalysts for unique treatment. *Id*.; see also *id*. at 268 ("EPA is finalizing, as proposed, a contained standard that 'addresses any potential risks of fires and explosions.' This performance-based standard addresses the potential for discard of all hazardous secondary materials, including spent petroleum catalysts, via fires and explosions.").

Accordingly, EPA did not believe that it was "necessary to promulgate a separate exclusion" for catalysts or that "additional conditions" were needed to ensure proper treatment of catalysts. *Id*. EPA defended its approach as one that "avoids the potential dual system of regulation" that would result from a catalyst-specific rule. *Id*.

Taken together, here is how we read EPA's various statements regarding spent catalysts: Despite what some commenters said, spent catalysts present a pyrophoric risk that needs to be addressed. The revised containment standard of the 2015 rule addresses that risk. It locates the new containment standard definition at § 260.10 and incorporates it by reference into Factor 3, see 862 F.3d at 57–58, and into both the Generator-Controlled and Verified Recycler Exclusions, see 80 Fed. Reg. at 1,738/1 (explaining that, because EPA "added a regulatory definition of the 'contained' standard" that applied to both exclusions, EPA revised both exclusions so that spent petroleum catalysts were now eligible).

Because we held that the revised containment standard survives our vacating other aspects of the Verified Recycler Exclusion, *API*, 862 F.3d at 72 (explaining that the "expanded containment requirement" does "not depend on any vacated portions of the Verified Recycler Exclusion"); see also *id*. at 75 (excepting the "expanded containment requirement" from vacatur of the Verified Recycler Exclusion), it will continue to apply to the Generator-Controlled Exclusion and the now-revived Transfer-Based Exclusion (as well as in Factor 3, where applicable).

EPA informs us that it has no objections to API's request, explaining that the provisions that survived the demise of the Verified Recycler Exclusion—the additional emergency preparedness requirement and the more muscular "contained" definition—independently resolve what had previously been the reason for separate catalyst treatment. See EPA's Resp. to Pets. Panel Reh'g at 12–13. As EPA's current position is fully supported by the rulemaking record, we are confident that it reflects EPA's view at the time of the rulemaking. See *Verizon v. FCC*, 740 F.3d 623, 659 (D.C. Cir. 2014); cf. *Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1457–59 (D.C. Cir.

1997) (accepting EPA's position on rehearing even in the face of its contrary position at oral argument).

Environmental Petitioners claim that our 2017 decision left intact the containment requirement as applied to generators, but *not* to third-party recyclers. On this premise they argue that because of this supposed gap, EPA would not have undone the bar on eligibility for spent catalysts. *See* Envtl. Pet'rs' Opp'n to Panel Reh'g 2–3 (comparing 40 C.F.R. § 261.4(a)(24)(v) with 40 C.F.R. § 261.4(a)(24)(vi)).

But the Environmental Petitioners' premise is mistaken. The revised containment standard is found in two places in the Verified Recycler Exclusion, one specifying the obligations of generators, 40 C.F.R. § 261.4(a)(24)(v), and the other specifying the obligations of the reclaimers (i.e., third-party recyclers), 40 C.F.R. § 261.4(a)(24)(vi). Section 261.4(a)(24) introduces the subject by providing that "[h]azardous secondary material that is generated and then transferred to a verified reclamation facility . . . is not a solid waste provided that . . . (v) [t]he hazardous secondary material *generator* satisfies all of the following conditions . . . (A) [t]he material must be *contained as defined in § 260.10*." (emphasis added). Subsection (vi) requires that "[r]eclaimers of hazardous secondary material excluded from regulation under this exclusion and intermediate facilities as defined in § 260.10 of this chapter satisfy all of the following conditions," including "(D) [t]he reclaimer and intermediate facility must manage the hazardous secondary material in a manner that is at least as protective as that employed for analogous raw material and *must be contained*." (emphasis added).

We severed and affirmed the former (the revised containment standard as it applied to generators), see *API*, 862 F.3d at 72, but said nothing of the latter (the containment requirement applied to third-party recyclers). Accordingly, that

third-party recycler provision referring to containment was vacated. But that same provision, which the Environmental Petitioners point to as being critical to EPA's decision to remove the spent catalyst disqualifier, is now-resuscitated because it also appears, word for word, in the now-revived Transfer-Based Exclusion. And it requires that the third-party recyclers—the reclaimers and intermediate facilities—contain hazardous secondary materials. See 40 C.F.R. § 261.4(a)(24)(vi)(D) (2009).

It is, of course, true that the provision in subsection (a)(24)(v) (applying to generators) expressly refers to § 260.10 while subsection (a)(24)(vi) (applying to third-party recyclers) does not. There being no extant definition of "contained" other than the one found at § 260.10, that is necessarily the one applied to third-party recyclers. We therefore conclude that both generators and third-party recyclers will be bound by the revised (and unvacated) containment standard found in the definitions at § 260.10.

Accordingly, we sever and affirm EPA's decision in the 2015 rule to eliminate the provision in the 2008 rule that had barred spent catalysts from qualifying for the Transfer-Based Exclusion.

*Scope of Factor 4 Vacatur*. In our 2017 decision, we wrote that because Factor 4's "comparable to or lower than" standard "is not reasonably focused on items that are 'part of the waste disposal problem,'" "the exception process must be adequate to offset that fault." *API*, 862 F.3d at 63. Finding that the exception process imposed "draconian" procedures on recyclers, *id*. at 61, we found the exception inadequate and vacated Factor 4 "insofar as it applies to all hazardous secondary materials via § 261.2(g)." *Id*. at 75. We explained that EPA had "also written [Factor 4] into specific exclusions," such as the Generator-Controlled Exclusion. *Id*. at 63. We did

not vacate those applications of Factor 4, taking the view that petitioners did "not challenge Factor 4 as applied to those individual exclusions." *Id.*

Industry Petitioners dispute that view, asserting that they challenged Factor 4 in its entirety. Upon revisiting their earlier briefing, we now agree, as does EPA. See EPA's Resp. to Pets. Panel Reh'g at 6. If anything, Industry Petitioners' attack on the legitimacy factors was broader—not narrower—than what we entertained. See, e.g., Industry Pet'rs' Br. at 20–25 (arguing that Factor 4 impermissibly reaches materials that are not discarded); *id*. at 65 (requesting that we vacate the legitimacy factors). We also find that nothing about the reasons we gave for vacating Factor 4 would not equally apply in situations where it is expressly incorporated into an exclusion (e.g., the Generator-Based Exclusion, 40 C.F.R. § 261.4(a)(23)(ii)(E)).

Factor 4 is therefore vacated in its entirety.

*Effect of Factor 4 Vacatur*. At EPA's request, EPA's Resp. to Pets. Panel Reh'g at 6–10, we clarify the effect of our vacating Factor 4. (We note that a subset of the Industry Petitioners appear to assume results different from our clarification. Freeport-McMoRan Inc. & Am. Chemistry Council Pet. Panel Reh'g at 10.)

In 2015, a few changes were made to the four legitimacy factors: (1) all four factors were made to apply to all excluded recycling including recycling invoking exclusions that predated the 2008 rule (in the 2008 rule, the legitimacy factors applied only to the then-new Generator-Controlled and Transfer-Based Exclusions), see 80 Fed. Reg. at 1,720/2–22/3; (2) Factors 3 and 4 became mandatory factors (in the 2008 rule, they were merely factors to be "considered"), see *id*. at 1,722/3–23/2; and (3) the substance of Factors 3 and 4 changed somewhat, see *id*. at 1,724/3–32/1.

We vacated Factor 4 on account of its substantive requirements, but left in place all other changes to the legitimacy factors. The net result is as follows: (1) the 2015 version of Factor 4 is vacated (in its entirety, as discussed above); (2) the 2015 change making the legitimacy factors applicable to all exclusions remains; (3) Factor 3 remains mandatory per the 2015 changes; and (4) the 2008 version of Factor 4 (which requires only that the factor be "considered") replaces the now-vacated 2015 version.

* * *

In sum, we grant the petitions for panel rehearing in three respects: (1) we sever and affirm EPA's decision to remove the spent catalyst disqualifier; (2) we vacate the 2015 rule's version of Factor 4 in its entirety; and (3) we clarify the effect of that vacatur. The petitions for rehearing are denied in all other respects.