# United States Court of Appeals
## For the First Circuit

Nos. 16-2251, 16-2261

ANTHONY E. SINAPI,

Plaintiff, Appellee, Cross-Appellant,

v.

RHODE ISLAND BOARD OF BAR EXAMINERS; DAVID A. WOLLIN,
individually and in his official capacity as member of the RI
Board of Bar Examiners; MELLISSA K. BURNETT TESTA, individually
and in her official capacity as member of the RI Board of Bar
Examiners; MARC B. DECOF, individually and in his official
capacity as member of the RI Board of Bar Examiners; THOMAS
DICKINSON, individually and in his official capacity as member
of the RI Board of Bar Examiners; CARLY B. IAFRATE, individually
and in her official capacity as member of the RI Board of Bar
Examiners; DEBORAH M. TATE, individually and in her official
capacity as member of the RI Board of Bar Examiners; ADAM M.
RAMOS, individually and in his official capacity as member of
the RI Board of Bar Examiners; MICHAEL A. ST. PIERRE,
individually and in his official capacity as member of the RI
Board of Bar Examiners; MICHAEL A. URSILLO, individually and in
his official capacity as member of the RI Board of Bar
Examiners; CYNTHIA WILSON-FRIAS, individually and in her
official capacity as member of the RI Board of Bar Examiners,

Defendants, Appellants, Cross-Appellees,

C. LEONARD O'BRIEN, individually and in his official capacity as
member of the RI Board of Bar Examiners,
Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Lynch and Lipez, <u>Circuit Judges</u>,
and Ponsor, <u>District Judge</u>[*]

———————————

<u>Michael W. Field</u>, Assistant Attorney General, with whom <u>Rebecca Tedford Partington</u>, Assistant Attorney General, was on brief, for appellant/cross-appellee.
<u>Richard A. Sinapi</u> for appellee/cross-appellant.

———————————

December 11, 2018

———————————

———————————

[*] Of the District of Massachusetts, sitting by designation.

**PONSOR, <u>District Judge</u>**.  Anthony Sinapi, an individual with attention deficit/hyperactivity disorder (ADHD) and anxiety, sought certain accommodations to assist him in taking the Rhode Island bar exam.  The Rhode Island Board of Bar Examiners (the Board) denied his request and, on review, the Chief Justice of the Rhode Island Supreme Court denied his petition for reversal of the Board's decision. Immediately following this denial, Sinapi filed suit in the U.S. District Court for the District of Rhode Island against the members of the Board.[1]  The district court issued a temporary restraining order (TRO) requiring the Board to permit Sinapi the requested accommodations.  In further proceedings, Sinapi filed an amended complaint, which the court ultimately dismissed, and a motion for attorneys' fees, which the court allowed.

These cross appeals followed.  The Board seeks reversal of the attorneys' fees award; Sinapi objects to the district court's dismissal of his amended complaint.  For the reasons set

---

[1]  The Board members, who are sued both individually and in their official capacities, are David Wollin, Mellissa K. Burnett Testa, Marc B. Decof, Thomas Dickinson, Carly B. Iafrate, Deborah M. Tate, Adam M. Ramos, Michael A. St. Pierre, Michael A. Ursillo, Cynthia Wilson-Frias, and C. Leonard O'Brien.  For the sake of simplicity, both the Board collectively and the individual members are referred to as "the Board."

forth below, we reverse the award of attorneys' fees and affirm the dismissal of the amended complaint.

## I.    BACKGROUND

The parties do not dispute the relevant facts and procedural history.  Anthony E. Sinapi suffers from ADHD and anxiety.  During college and law school he received certain testing accommodations, such as extra time and low-distraction examination environments.  As Sinapi prepared to take the bar exams in Massachusetts and Rhode Island, he sought similar accommodations, specifically fifty percent extra time, a distraction-reduced testing environment, and permission to take prescribed medication in the testing room.

The Massachusetts Board of Bar Examiners initially denied Sinapi's request but relented and approved the accommodations after Sinapi submitted additional materials.  The Rhode Island Board submitted Sinapi's request for accommodations to an impartial medical examiner for evaluation and, on July 16, 2015, notified Sinapi by letter that his request for accommodations was denied.  The Board's reason, the letter stated, was that Sinapi's request "was not supported by the medical documentation provided."

Rule 4(b) of the Rhode Island Board of Bar Examiners Rules of Practice Governing Admission on Examination states that requests for reconsideration of Board decisions are "discouraged."

Instead, disappointed applicants are directed to file a petition for review with the Rhode Island Supreme Court within thirty days of receiving the denial.

Despite this direction, Sinapi contacted the Board's Bar Administrator on July 16, 2015, to request reconsideration of the no-accommodation decision. The next day, July 17, 2015, the Board's counsel contacted Sinapi by phone. In the conversation that followed, Sinapi pressed for clarification of the reasons supporting the Board's decision and pointed to the contrary decision of the Massachusetts Board.

By letter dated Monday, July 20, 2015, the Board's counsel advised Sinapi that he could petition the Rhode Island Supreme Court for a review of the Board's denial. In addition, the letter advised Sinapi that, with submission of a valid prescription, he could bring his medication into the examination room.

On July 22, 2015, six days before the Rhode Island bar exam, Sinapi filed an Emergency Petition for Review and Summary Reversal of Denial of Testing Accommodations and Access to Documentation in Support of Denial, with the Rhode Island Supreme Court. The following day, July 23, 2015, Chief Justice Paul A. Suttell heard the petition. On July 24, 2015, Chief Justice Suttell granted Sinapi's request for access to the basis for the Board's rejection of the request for accommodation (the medical

evaluation), but otherwise denied the petition.  His order, dated July 24, 2015, stated as follows:

> This matter came before the Duty Justice on an emergency petition seeking review and summary reversal of a decision of the Board of Bar Examiners (the Board) denying the petitioner special testing accommodations for the July 2015 Rhode Island bar examination and access to the Board's independent medical evaluation of his requested accommodation.  After carefully considering the arguments of counsel, the Duty Justice hereby directs that the following Order shall enter: 1. The petitioner's request for emergency relief is hereby denied. 2. The petitioner's request for access to the independent medical evaluation is hereby granted.

That same day, Friday, July 24, 2015, Sinapi filed this suit against the Board in the U.S. District Court for the District of Rhode Island.  He sought both monetary damages for disability discrimination under federal law and a TRO compelling the Board to permit him certain bar exam accommodations, including a reduced margin of twenty-five percent additional time and a testing environment with limited distractions.  In his request for the TRO, Sinapi emphasized equitable considerations, most prominently the lack of harm to the Board and the corresponding severe harm he would suffer if he were compelled to sit for the imminent exam without the requested accommodations.  Sinapi even offered to stipulate that he would retake the exam if he passed it with the requested accommodations but was found not to be entitled to these accommodations in subsequent proceedings on the merits of his claims.

Events following Sinapi's July 24, 2015, filing moved at a headlong pace. The Board filed its opposition on Sunday, July 26. On Monday, July 27, Sinapi filed a reply. The district court held a hearing later that day, with the bar exam looming on the 28th.

After hearing argument, the district court granted Sinapi's motion for a TRO and ordered that he be permitted to sit for the bar exam the following day with the accommodations he sought. The district court's decision emphasized the harm to Sinapi and the balance of harm weighing in favor of him as compared to the Board. In finding that Sinapi "certainly would be irreparably harmed" without the accommodations, the TRO noted that because Sinapi had registered to sit for the multistate portion of the bar exam in Rhode Island, with his score being applicable both in Rhode Island and in Massachusetts, the denial of accommodations in Rhode Island would undermine his chances for success in both states.

In addition to irreparable harm, the district court also found "based on the limited record before it" that Sinapi had demonstrated a likelihood of success on the merits. In making this finding, the court identified particularly the failure of the Board to consider the accommodations afforded to Sinapi in Massachusetts.

On July 28, 2015, Sinapi sat for the Rhode Island bar exam with the accommodations of twenty-five percent extra time and a distraction-reduced testing environment.[2]

On August 27, 2015, the Board filed an appeal of the grant of the TRO with this court, arguing among other things that the district court lacked jurisdiction to enter the TRO. On October 13, 2015, this court dismissed the Board's appeal as moot because Sinapi had by then already sat for the Rhode Island bar exam with accommodations, and thus the district court's order "ha[d] been irrevocably executed." We added, "Even assuming that we may reach other issues in the pending case, we prefer to wait for further developments in the trial court."

Following this, Sinapi's suit seeking monetary damages for disability discrimination proceeded in the district court. On October 26, 2015, Sinapi filed an amended complaint adding a count under Rhode Island law, and the Board responded with a motion to dismiss. Before Sinapi filed an opposition to the Board's motion, the district court on November 23, 2015, issued an order sua sponte requiring Sinapi to show cause why the case should not be dismissed "for lack of jurisdiction and there being no current case in controversy." Sinapi responded to the court's order to show cause,

---

[2] Sinapi failed this exam, but upon retaking it the following February, this time with fifty percent additional test-taking time, he passed.

but he did not file any formal opposition to the Board's motion to dismiss.

On April 15, 2016, the district court issued its ruling on the Board's motion to dismiss. The court observed that Sinapi (without formally removing it from his complaint) appeared to have "abandoned his claim for injunctive relief in light of the Court's decision to grant his temporary restraining order." Based on this, the court found that only the "issue of [the Board's] immunity from [Sinapi's] compensatory and punitive damages claims" remained. These claims the court dismissed based on Eleventh Amendment and quasi-judicial immunity.

After the dismissal of his claims, Sinapi filed a motion for attorneys' fees and costs asserting he was a prevailing party under the fee-shifting provisions of the Americans with Disabilities Act, 42 U.S.C. § 12205, based on his successful motion for a TRO. Over the Board's opposition, the district court allowed Sinapi's motion and awarded him $19,486.00 in fees and $400.00 in costs.

As noted above, the Board filed a timely appeal of the district court's award of attorneys' fees and costs, and Sinapi filed a cross-appeal of the dismissal of his amended complaint.

II.  ANALYSIS

A.  Rooker-Feldman

Our jurisdiction is pursuant to 28 U.S.C. § 1291, which gives us power to review final decisions of the district courts. In exercising this power, we regularly begin with an examination of the basis for the district court's own jurisdiction. A district court generally has the obligation, when there is any question, to confirm that it has subject matter jurisdiction prior to considering the merits of the underlying controversy. Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013).

Throughout this litigation, the Board (in addition to offering other arguments) has vigorously contended that, under the Rooker-Feldman doctrine, the district court lacked subject matter jurisdiction over the claims raised by Sinapi. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983) -- typically cited together -- stand for the proposition that only the Supreme Court has the power to reverse or modify final state court judgments. The doctrine divests "lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court." Klimowicz v. Deutsche Bank National Trust Company, 907 F.3d 61, 64 (1st Cir. 2018) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-93 (2005)); Coggeshall v. Massachusetts Bd. of Registration of Psychologists, 604 F.3d 658, 663 (1st Cir. 2010).

- 10 -

The doctrine applies "to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 284. We have observed that the Rooker-Feldman doctrine applies "where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 29 (1st Cir. 2005) (quoting Exxon Mobil, 544 U.S. at 291).

Applying these precedents in another case from Rhode Island involving the practice of law, we have noted that a litigant could not avoid the impact of the Rooker-Feldman doctrine simply by recasting his claims in federal court as arising under the United States Constitution, where adjudicating these claims would "necessarily require reviewing the merits of the Rhode Island Supreme Court's decision." McKenna v. Curtin, 869 F.3d 44, 48 (1st Cir. 2017).

The Board's Rooker-Feldman argument has force, but on the particular facts of this case it raises troublesome issues -- regarding, for example, the finality of Chief Justice Suttell's ruling and the precise issues raised in the parallel state and

- 11 -

federal proceedings -- that we need not address here. Courts of Appeals generally have an obligation to address any question of Article III jurisdiction before addressing the merits of an appeal. Steele Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-97 (1998). The Rooker-Feldman doctrine, however, is based on 28 U.S.C. § 1257 and implicates statutory, not Article III, jurisdiction. Exxon Mobil Corp., 544 U.S. at 291; In Re Athens/Alpha Gas Corp., 715 F.3d 230, 235 (8th Cir. 2013).

Some controversy exists among the circuits as to whether a court may step around a Rooker-Feldman issue to reach a more straightforward issue that will easily resolve a case on the merits. See Edwards v. City of Jonesboro, 645 F.3d 1014, 1017-18 (8th Cir. 2011) (collecting authorities). This circuit's precedent stands with those that permit a bypass of a Rooker-Feldman issue where an alternative substantive ruling provides a simpler and more direct resolution of an appeal. Torromeo v. Town of Fremont, NH, 438 F.3d 113, 115 (1st Cir. 2006). This approach is consistent with our more general rule that bypassing jurisdictional questions to consider the merits is appropriate where, as here, the jurisdictional question is statutory. See, e.g., United States v. Catala, 870 F.3d 6, 10 (1st Cir. 2017) (distinguishing between statutory and Article III jurisdiction); Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 59 (1st Cir. 2003) (holding that inquiries into statutory

jurisdiction need not precede merits inquiries and collecting cases holding the same).

Bypassing these difficult jurisdictional questions is particularly appropriate in cases like this one where the merits issues are "foreordained" and "do[] not create new precedent." Seale v. I.N.S., 323 F.3d 150, 152 (1st Cir. 2003); Royal Siam Corp. v. Chertoff, 484 F.3d 139, 144 (1st Cir. 2007) (setting aside a jurisdictional question when it "is not only thorny but also a matter of statutory, not constitutional, dimension" and where "[o]n the other hand, the outcome on the merits is foreordained"). Further, this approach may be taken when the prevailing party on the merits is the same as the prevailing party were jurisdiction denied because, in such a case, the outcome is the same either way. This is such a case.[3]

---

[3] It could be argued that, because the Board presented the Rooker-Feldman jurisdictional argument in its round-one appeal, the earlier panel's brevis opinion describing the substantive issue on appeal at that time as "moot" constituted an implicit ruling that no Rooker-Feldman-based jurisdictional issue existed at that time. That order, however, merely recognized the practical reality that we could not order the district court to turn the clock back and bar an accommodation that Sinapi had already received. As the court stated, all other substantive issues in the case -- which included, necessarily, the Board's Rooker-Feldman argument -- would await "further developments in the trial court." This interpretation of the earlier panel's intent seems particularly compelling here, since "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation omitted). In any event the issue of the viability of the Rooker-Feldman doctrine on the facts of

- 13 -

Turning to the merits of the cross appeals, our logic unfolds in two steps. First, the award of attorneys' fees was improper because Sinapi was not, as the law in this area requires, a prevailing party. Second, the district court correctly ruled that Sinapi's claims for monetary damages against the Board and its members in their official capacities were barred by the Eleventh Amendment, and against the members in their individual capacities were foreclosed by quasi-judicial immunity. We begin with the award of attorneys' fees.

B. Attorneys' Fees

It is very well established that, in applying a fee-shifting statute such as the Americans with Disabilities Act (ADA), a court may make an award of attorneys' fees only where a litigant qualifies as a "prevailing party." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 8 (1st Cir. 2011); 42 U.S.C. § 12205. A review of Supreme Court authority reveals how steep the incline is disfavoring a fee award in cases where, as here, the moving party never achieves success on the merits. In Buckhannon Bd. and Care Home v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598 (2001), the plaintiff, an assisted living facility, brought suit seeking relief from state orders requiring it to close following a failed inspection. The state agreed to stay the shut-down order

_____

this case is somewhat academic since, for the reasons stated, we have chosen not to address it.

while the litigation was pending. Before the case was resolved, the legislature eliminated the applicable inspection provision, and the lawsuit was dismissed as moot. In rejecting the then-prevalent "catalyst" theory supporting an award of fees, the Court found that it had previously recognized "prevailing party" status and awarded attorneys' fees only where the party had received a judgment on the merits or obtained a favorable court-sanctioned consent decree. Id. at 602-608. Based on this, the Court affirmed the lower court's denial of fees.

Six years later in Sole v. Wyner, 551 U.S. 74 (2007), the Court addressed a fact pattern closer to the one we confront here. In Sole, the plaintiff wanted to present, on a public beach, a Valentine's Day art installation comprising nude individuals assembled into the form of a peace symbol. The state Department of Environmental Protection prohibited the artwork unless the participants were minimally clothed. A complaint was filed on February 12, 2003, and the district court heard the plaintiff's emergency motion for a preliminary injunction on February 13, the day before the proposed performance. Although, as the Court noted, the district court judge was "disconcerted by the hurried character of the proceeding," id. at 79, he issued the injunction and the display went forward. In a subsequent proceeding on the merits, in somewhat altered circumstances, the court entered summary judgment for the defendants. Despite this, the court awarded

attorneys' fees based on the plaintiff's success in obtaining the preliminary relief, and the Eleventh Circuit affirmed. The Supreme Court unanimously reversed, holding that, despite plaintiff's "transient victory at the threshold" the ultimate merits-based decision against her meant she was not eligible for a fee award. Id. at 78.

First Circuit authority follows this track. In Race v. Toleda-Davila, 291 F.3d 857 (1st Cir. 2002), the plaintiff obtained a preliminary injunction barring the police from arresting him for driving with an expired registration sticker. Following successful administrative proceedings, the plaintiff moved for voluntary dismissal of his case and for attorneys' fees based on the preliminary relief. The district court denied the fees, and we affirmed, citing Buckhannon and finding that fees were not proper where the plaintiff failed to obtain at least some relief based on the merits of his claims. Id. at 859.

As in Sole, the preliminary proceedings in the case before us were "necessarily hasty and abbreviated." Sole, 551 U.S. at 84. While it is true that the district court made the required threshold assessment of a likelihood of success on the merits, the precipitant circumstances permitted no thorough examination of the merits of this issue prior to the issuance of the TRO. Indeed, as noted, when the Board later moved to dismiss any claim for injunctive relief, the district court declined to

address its substantive arguments, finding that Sinapi appeared "to have abandoned his claim for injunctive relief in light of the court's decision to grant his temporary restraining order." Like Ms. Wyner with her beachfront artistic display, Sinapi realized his threshold goal of getting the accommodations, but his "initial victory was ephemeral." Sole, 551 U.S. at 86. Since the substance of Sinapi's claim for injunctive relief was never addressed in any depth, despite the Board's vigorous argument that the claim was fatally flawed, and no merits-based decision ever entered in his favor, Sinapi never achieved prevailing party status, and the award of fees was unsupported.

A shift in perspective highlights the basic equity of this conclusion. To repeat, the Board has ardently opposed any claim by Sinapi for injunctive relief from the outset. Sinapi himself, as noted, recognized that a subsequent judgment against him on the merits of his claim for injunctive relief might require him to retake the bar exam. Nevertheless, beyond a necessarily hasty review of the likelihood of Sinapi's success on the merits, the Board never received in-depth assessment of its substantive arguments. It would be unfair to deem Sinapi a "prevailing" party in these circumstances and slap the Board with a fee bill based on a finding it never received a fair opportunity to contest on a properly developed record.

In bringing this part of the analysis to an end, it is important to reemphasize that we are not holding that preliminary equitable relief, unless explicitly followed by a favorable judgment on the merits, can never provide the basis for an attorneys' fee award. As in Sole, "[w]e express no view on whether, in the absence of a final decision on the merits of a claim for permanent injunctive relief, success in gaining a preliminary injunction may sometimes warrant an award of counsel fees." Id. at 86. Here, however, where the initial assessment of likelihood of success on the merits was so pressured and necessarily superficial -- with the bar exam only hours away -- and where the ultimate issue of Sinapi's entitlement to injunctive relief was never addressed substantively, the fee award based on Sinapi's supposed "prevailing party" status was not justified.

C. Dismissal of Damage Claims Against the Board

Turning to the decision to allow the Board's motion to dismiss the damage claim in the complaint, we find it was entirely correct. Though our analysis involves a modest degree of intricacy, the path to that conclusion is clear.

1. Eleventh Amendment Immunity

Sinapi's amended complaint sought monetary damages from the Board and its members in both their official and their individual capacities under 42 U.S.C. § 1983 and under Title II of

the ADA.[4]  We begin with the claims against the Board and its members in their official capacities.  The district court dismissed these claims based on Eleventh Amendment immunity.  Significantly, in his Statement of Issues on appeal, Sinapi seeks review of that ruling only to the extent that it applied to a violation of the ADA that "actually violated the Fourteenth Amendment."  Sinapi offers no argument that the district court erred in dismissing claims offered solely under Title II of the ADA that did not rise to the level of Fourteenth Amendment violations.[5]

The Eleventh Amendment provides a state immunity from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It is now well established that such immunity also applies to suits brought by a state's own citizens.  Tennessee v. Lane, 541 U.S. 509, 517 (2004).  There can be no question that the Board, including its members in their official capacities, stands in the shoes of Rhode Island itself, as an arm of the state.  In re Petition of DeOrsey, 312 A.2d 720, 724 (1973).  Thus, without more, the Board and its members in their

---

[4]  The amended complaint also included claims under Rhode Island law, but these are not the subject of appeal.

[5]   If Sinapi had offered such a pure-ADA argument, a discussion of the possible application of Tennessee v. Lane might have been necessary.  Since the argument does not appear, however, we leave that issue for another day.

official capacities would appear to be protected by the Eleventh Amendment from any suits for money damages.

Congress, however, has the power to abrogate Eleventh Amendment immunity when properly exercising its power under Section 5 of the Fourteenth Amendment. No immunity protects states from a claim for monetary damages based on "actual violations" of the Fourteenth Amendment. United States v. Georgia, 546 U.S. 151, 158 (2006) (emphasis in original).

The question we face here, then, is whether Sinapi alleged sufficient facts to make out such an "actual" violation of the Fourteenth Amendment.

The Tenth Circuit in Guttman v. Khalsa, 669 F.3d 1101 (10th Cir. 2012) addressed this issue in a case involving a physician whose license to practice medicine had been revoked by the New Mexico Board of Medical Examiners. Without in any way adopting Guttman, we find a comparison of that case to this one useful. As the first step in its analysis, the court examined whether New Mexico's conduct in revoking the plaintiff's license "actually violate[d] the Fourteenth Amendment . . . ." Id. at 1113 (citing Georgia, 546 U.S. at 159).

The potential Fourteenth Amendment violations identified by the plaintiff in Guttman were significantly more serious than those identified by Sinapi here. In Guttman the New Mexico board suspended the plaintiff's license to practice medicine with no

pre-deprivation hearing, with delays apparently unsanctioned by state law, with hearing officers who had personal knowledge of the plaintiff, and in reliance on outdated evidence. Guttman, 669 F.3d at 1114-15. In weighing these allegations, the Tenth Circuit emphasized that the constitutional sufficiency of the process plaintiff received was a matter of federal law and found that "when examined from the perspective of federal law, the alleged deficiencies do not rise to level of a denial of process." Guttman, 669 F.3d at 1115 (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 540-541 (1985)).

Here, the amended complaint offers four significantly less compelling alleged due process violations: delay in reviewing Sinapi's application for accommodation; failure to disclose the reasons for the denial of the application; failure to provide for timely reconsideration of the denial; and failure to provide notice of the mechanism of appeal. The undisputed facts as set forth in the amended complaint, however, are: (1) that Sinapi received notice of the denial of his application for the accommodation twelve days before the examination; (2) that he was given the reason for the denial (lack of support in the medical record based on an independent medical review) and ultimately a copy of the letter supporting the Board's action; (3) that he was informed of the mechanism to obtain review of the denial and in fact pursued his appeal; and (4) that he indeed obtained a review of the Board's

decision by the Chief Justice of the Rhode Island Supreme Court prior to his examination.[6]

This process could possibly have been improved; most processes can be. But the standard here is relatively modest. As Guttman observed, "professional licensing decisions are subject only to rational basis review." Id. at 1123. We are far from the arena of strict scrutiny, and the process Sinapi received, even accepting the allegations of his complaint, falls well within the basic constitutional requirements.[7]

In sum, we conclude that, because the alleged violations of Title II of the ADA did not constitute actual violations of the Fourteenth Amendment, the Board and its members in their official capacities enjoy protection under the Eleventh Amendment and are immune from any claim for monetary damages. This leaves only the claim against the members of the Board individually.

---

[6] Sinapi's repeated suggestion that the Chief Justice's ruling was only provisional because he lacked time to convene the full court is unsupported by the language of the ruling or any other portion of the record.

[7] As we have noted, since Sinapi has not raised it, we need not take up the second issue addressed in Guttman: whether a state enjoys Eleventh Amendment immunity in the face of a demand for monetary damages based on misconduct that allegedly violated Title II of the ADA, but did not constitute an actual violation of the Fourteen Amendment. See supra n. 4.

2. Quasi-Judicial Immunity

As to this claim, it is manifest that the Board members enjoy quasi-judicial immunity.  Our decision in Bettencourt v. Bd. of Registration in Med. of Com. of Mass., 904 F.2d 772 (1st Cir. 1990) establishes the applicable standards.  In that case, the plaintiff doctor sought monetary damages from the Board of Registration (BOR) based on an alleged violation of his civil rights committed by the BOR when it revoked his medical license.  We noted in Bettencourt that quasi-judicial immunity extended "to agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court."  Id. at 782 (emphasis in original) (citing Butz v. Economou, 438 U.S. 478, 511-17 (1977).

In concluding that the BOR members were immune from claims for monetary damages, Bettencourt identified three pivotal questions.  First, did the BOR member, "like a judge, perform a traditional 'adjudicatory' function, in that he decide[d] facts, applie[d] law, and otherwise resolve[d] disputes on the merits . . . ?"  Second, did the BOR member, "like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions?"  Third, did the BOR member, "like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a [party's] constitutional rights?"  Id. at 783.  See also Coggeshall v.

- 23 -

<u>Massachusetts Bd. of Registration of Psychologists</u>, 604 F.3d 658, 662-663 (1st Cir. 2010) (reaffirming the <u>Bettencourt</u> criteria).

The answers to all three of these questions are self-evident. First, the role of the Board member is functionally comparable to that of a judge. Here, Board members weighed the facts relating to the request for accommodations, albeit in a manner disappointing to Sinapi, and resolved the dispute about his entitlement to the accommodations on its merits. Second, the act of denying a bar applicant an accommodation is likely to stimulate a litigious reaction by the disappointed applicant, as was the case here. The need for quasi-judicial protection of the Board member is almost painfully obvious. Few people would serve on the Board knowing that any negative accommodation decision would likely trigger a lawsuit aimed at their personal checking accounts. Even if someone had the brass to join the Board in these circumstances, denials of accommodations, however well founded, would likely be few and reluctant. Quasi-judicial protection is simply essential if the Board is to function objectively. Finally, the process embraced protections (including an independent medical assessment and plenary review by the Rhode Island Supreme Court) sufficient to "enhance the reliability of information and the impartiality of the decisionmaking process." <u>Id.</u>

Based on this analysis we conclude that the Board members in their individual capacities were immune from any claim for monetary damages.[8]

### III. CONCLUSION

For the reasons set forth above, we reverse and vacate the district court's award of attorneys' fees and affirm its dismissal of Sinapi's claims for monetary relief.

---

[8] Because the argument for quasi-judicial immunity is dispositive, we have no need to address the alternate argument, also strong, that the Board members in their individual capacities enjoyed qualified immunity as well.