# United States Court of Appeals
## For the First Circuit

No. 21-1382

BINYAMIN I. EFREOM; MARILYN C. DISTEFANO; SUSAN L. HARTNETT; ADRIENNE R. DIMEO; MARY G. KENNEDY; CYNTHIA J. RONDEAU; MARY O'CONNELL MCKENNA; TIMOTHY H. MURPHY; DENNIS F. ZIROLI; ANNMARIE BOLVIN; WILLIAM P. BERUBE; JOSEPH F. CLIFFORD, III; ANTONETTA R. MELLO; MAUREEN RITA VAVOLOTIS; WILLIAM BLAIR; PATRICIA E. GIAMMARCO; BARBARA A. MOUSSALLI; SANDRA A. CURRAN; KATHLYNE E. WALSH; WILLIAM H. FERGUSON; CAROL SCHNEIDER; JOANNE A. MATISEWSKI; LAURIE A. SCIALABBA; JEAN PETISCE-LYNCH; ANTHONY T. BAGAGLIA; JOANN C. LOMBARDI; ANTHONY J. RICCI; JAMES E. BARDEN; NANCY A. LEMME; MARY F SHERLOCK; PAMELA J. DELVECCHIO; JANET KELLER; DEAN L. LEES; ROBERT M. PESATURO, JR.; JANICE M. COLERICK; JAMES H. COX; KATHLEEN A. CRESCENZO; SANDRA L. MCCULLOUGH; MICHAEL N. SENERCHIA; KAREN M. TANNER; NORMA JEAN PALAZZO; DAVID GOODMAN; ROBERT J. DIMAIO; FRANCESCA BEDELL; JAMES BEDELL; MARGARET HARRIS; MARY KATHERINE O'NEILL; BRIAN KENNEDY,

Plaintiffs, Appellants,

GREGORY MARCELLO,

Plaintiff,

v.

DANIEL J. MCKEE, in his capacity as Governor of the State of Rhode Island; EMPLOYEES' RETIREMENT SYSTEM OF RHODE ISLAND, by and through FRANK J. KARPINSKI, its Executive Director; SETH MAGAZINER, in his capacity as Chairperson of the Retirement Board,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

————————————————

Before

Barron, <u>Chief Judge</u>,
Selya and Gelpí, <u>Circuit Judges</u>.

————————————————

<u>George J. West</u> for appellants.

<u>Nicole J. Benjamin</u>, with whom <u>John A. Tarantino</u>, <u>Adler Pollock & Sheehan P.C.</u>, <u>Michael W. Field</u>, and <u>Rhode Island Office of Attorney General</u>, for appellees Daniel J. McKee, in his capacity as Governor of the State of Rhode Island, Seth Magaziner, in his capacity as Chairperson of the Retirement Board, and the Employees' Retirement System of Rhode Island.

————————————————

August 18, 2022

————————————————

**GELPÍ**, <u>Circuit Judge</u>.  This is an appeal from an order and judgment granting defendant-appellees' motion to dismiss appellants' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Appellants are forty-nine members of a class of retired Rhode Island public employees impacted by changes to the state's retirement benefits scheme, as initially implemented by the Rhode Island Retirement Security Act of 2011 ("RIRSA"), and subsequently modified by legislation in 2015 (the "2015 Amendments").  The latter was enacted pursuant to a class-action settlement agreement reached following litigation in state court, in which each appellant was a party.  Unsated by what they consider to be meager relief, appellants now seek redress in federal court under 42 U.S.C. § 1983, alleging various constitutional violations in the changes to Rhode Island's retirement benefits scheme (Counts I-IV) and in the class-action settlement agreement itself (Count V).  However, in attempting to effectively appeal a final judgment of the Rhode Island Supreme Court, appellants run afoul of the <u>Rooker</u>-<u>Feldman</u> doctrine with respect to Counts I-IV.  <u>See</u> <u>Rooker</u> v. <u>Fid. Tr. Co.</u>, 263 U.S. 413 (1923); <u>D.C. Ct. of Appeals</u> v. <u>Feldman</u>, 460 U.S. 462 (1983).  Count V, meanwhile, fails due to a lack of standing.  As such, we affirm the district court's dismissal for want of subject-matter jurisdiction.

## I. Background[1]

Facing a steep budget deficit in the wake of the 2008 financial crisis, Rhode Island enacted RIRSA in 2011 to shore up its then-precarious pension system, the Employees' Retirement System of Rhode Island ("ERSRI"). 2011 R.I. Pub. Laws ch. 408-409; see also id. ch. 408 § 1(a)(1) (finding that "[t]he State of Rhode Island has one of the lowest funded and most vulnerable statewide pension systems in the country"); Cranston Firefighters, IAFF Loc. 1363 v. Raimondo, 880 F.3d 44, 46 (1st Cir. 2018) ("By 2011, Rhode Island's public employee pension system itself faced dire underfunding, which the state legislature labeled a 'fiscal peril' that threatened the ability of Rhode Island's municipalities to provide basic public services."). RIRSA, which followed previous pension reforms enacted in 2009 and 2010, altered in various ways the retirement benefits to which public employees were entitled, including by reducing the amount and availability of cost-of-living adjustment ("COLA") payments to retirees. See R.I. Pub. Emps. Retiree Coal. v. Raimondo (RIPERC I), No. PC 2015-1468, 2015 WL 1872189, at *1, *6 (R.I. Super. Ct. Apr. 16, 2015). The Rhode Island Superior Court summarized these changes as follows:

> For state employees who were eligible to retire but

---

[1] The parties do not dispute the relevant facts, as outlined in the district court's opinion and the various state court decisions relating to this case.

- 4 -

had not yet retired as of July 1, 2012, RIRSA changed the formula by which their retirement allowance would be calculated. For correctional officers, RIRSA also altered the rules governing retirement eligibility and changed the formula for their retirement allowance. For teachers who were not eligible to retire as of July 1, 2012, RIRSA increased the retirement age, changed the formula for calculating the retirement allowance, and changed the employee contribution rate. RIRSA also made changes to the retirement benefits for municipal employees who were members of the Municipal Employees Retirement System (MERS), which is also part of the ERSRI. For all members receiving retirement benefits under the ERSRI, including those employees who had already retired as of June 30, 2012, RIRSA reduced the amount of the annual COLA benefit, limited the COLA to apply only to the first $25,000 of a member's retirement benefit, and suspended the annual COLA making it payable once every five years until the various pension plans were at least 80% funded. In addition, RIRSA changed the structure of the retirement program from a traditional defined benefit plan to a "hybrid plan" with a smaller defined benefit plan and a supplemental defined contribution plan. For active Police and Firefighters, RIRSA made a number of other changes including increasing the minimum service requirement and adding a minimum retirement age of 55 years.

R.I. Pub. Emps. Retiree Coal. v. Raimondo (RIPERC II), No. PC 2015-1468, 2015 WL 3648161, at *2 (R.I. Super. Ct. June 9, 2015); see also Cranston Firefighters, 880 F.3d at 45-46 (outlining the history of the Rhode Island pension system and summarizing RIRSA). The upshot was a "severe diminution" in the anticipated retirement benefits for affected public employees. Clifford v. Raimondo, 184 A.3d 673, 679 (R.I. 2018).

Litigation promptly ensued in state court. Unions,

retiree associations, and individuals filed lawsuits alleging that RIRSA violated the contract, takings, and due process clauses of the Rhode Island Constitution. See RIPERC I, 2015 WL 1872189, at *1 (cataloguing the numerous challenges to RIRSA). Appellants, alongside some 150 other retired public employees, were plaintiffs in one such case ("the Clifford action") filed in Rhode Island Superior Court in 2014, which focused on RIRSA's cuts to retirees' COLAs. Clifford v. Chafee, No. KC-2014-345 (R.I. Super. Ct. Jan. 14, 2015). The various pension cases, including the Clifford action and previous suits challenging the 2009 and 2010 pension reforms on identical constitutional grounds, were eventually consolidated for trial.

After extensive discovery, and with the assistance of a special master, most of the parties to the consolidated action reached a proposed settlement agreement.[2] RIPERC I, 2015 WL 1872189, at *2. In April 2015, a class-action lawsuit was filed for settlement purposes, in which the Superior Court certified the following plaintiff class:

> All persons (and/or their beneficiaries) who, on or before July 1, 2015, are receiving benefits or are participating in the State Employees, Teachers, or

---

[2] A few parties, representing a group of active police officers and the police and fire personnel of the City of Cranston, did not agree to the proposal. Consequently, these parties -- who had previously filed three pension lawsuits that were joined in the consolidated action -- were not included in the subsequent class-action lawsuit and settlement. See RIPERC I, 2015 WL 1872189, at *2.

- 6 -

Municipal Employees' retirement systems administered by ERSRI and all future employees, excepting only those individuals who on July 1, 2015, are participating in a municipal retirement system administered by ERSRI for municipal police officers in any municipality and/or for fire personnel of the City of Cranston.

Id. at *10.  The Superior Court also certified a plaintiff subclass comprising "[a]ll retired members and beneficiaries who retired on or before June 30, 2015, who are receiving a retirement benefit under ERS [Teachers and State Employees Retirement System] or any MERS unit," designating class representatives and appointing class counsel for the same.  Id.  The plaintiffs in the Clifford action, and appellants here, were all members of that retiree subclass. Support for the proposed settlement was not unanimous among the individual class members, and appellants here were among those who opposed the proposal  Nonetheless, because the court certified the class under Rule 23(b)(2) of the Rhode Island Superior Court Rules of Civil Procedure, objecting members were not permitted to opt out of the class.[3]  Id.; cf. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362 (2011) (noting that Federal Rule of Civil Procedure 23(b)(2) likewise "provides no opportunity for . . . class members

---

[3] In relevant part, Rule 23(b)(2) provides that a class action may be maintained if, in addition to meeting the standard Rule 23(a) prerequisites of numerosity, commonality, typicality and adequacy of representation, "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."  R.I. Super Ct. R. Civ. P. 23(b)(2).

- 7 -

to opt out").  In the same decision, the Superior Court preliminarily approved the settlement as fair, adequate, and reasonable.  RIPERC I, 2015 WL 1872189, at *10.

The proposed settlement was conditioned upon the passage of the 2015 Amendments, which would entitle pensioners and public employees to certain greater benefits than provided under RIRSA. The Superior Court summarized the relevant provisions of the 2015 Amendments:

- A one-time COLA payment of 2% applied to the first $25,000 of the pension benefit and that amount added to the base benefit will be paid to retirees (or their beneficiaries) who participate in a COLA program and who retired on or before June 30, 2012 as soon as administratively reasonable following the passage of the legislation based on the amount of benefit payable on the effective date of the legislation.
- For funds that are not already funded, the settlement shortens the time intervals between suspended COLA payments from once every five years to once every four years.  The settlement also improves the COLA limitation for current retirees whose COLA is suspended.  The settlement also requires a more favorable indexing of COLA Cap for all current and future retirees.  The settlement also changes the COLA calculation to one more likely to produce a positive number and dictates that the COLA formula will be calculated annually, regardless of funding level, and when paid, the COLA will be compounded for all receiving a COLA.
- Current retirees (or their beneficiaries) who have or will have retired on or before June 30, 2015 will receive two payments: (1) a one-time $500.00 stipend (not added to the COLA base) within sixty days of the enactment of the legislation approving the terms of the settlement and (2) a one-time $500 stipend

- 8 -

payable one year later.

- For State Workers, Teachers, and General MERS, the settlement (1) adds another calculation to reduce the minimum retirement age; (2) improves the available accrual rate for employees with twenty years or more of service as of June 30, 2012; (3) requires increased contributions by the employer to the Defined Contribution Plan for employees with ten or more years of service (but less than twenty) as of June 30, 2012; (4) waives the administration fee for any employees participating in the Defined Contribution Plan who make $35,000 or less; and (5) adds another calculation designed to limit the impact of the "anti-spiking" rule imposed by the RIRSA on part-time employees.
- For MERS Firefighters (excluding Cranston Firefighters), the settlement (1) lowers the age and service requirements for retirement; (2) increases the accrual rate for Firefighters who retire at age fifty-seven with thirty years of service.
- For State Correctional Officers, the settlement increases the accrual rate for correctional officers with fewer than twenty-five years of service as of June 30, 2012.
- The settlement reduces the impact of an early retirement.
- The settlement allows Municipalities to "re-amortize"; that is, partially refinance, to be able to pay for the increased cost of the settlement.
- Otherwise, the terms of the RIRSA remain the same.

Id. at *3-4.  The settlement agreement also included covenants wherein the parties agreed not to "directly or indirectly, propose, support, encourage or advocate for any legislative action concerning or relating to retirement benefits other than the adoption of the [2015 Amendments]," nor to "directly or indirectly, propose, support, encourage or advocate that any other person,

- 9 -

firm or entity do anything or refrain from doing something that a party to [the] Settlement Agreement would be prohibited from doing or refraining from doing hereunder."

In May 2015, the Superior Court held a five-day fairness hearing regarding the proposed settlement. The hearing was vigorously contested. Approximately 400 class members provided written objections to the settlement in advance of the hearing, and 35 addressed the court at the hearing to articulate their concerns. RIPERC II, 2015 WL 3648161, at *6, *12 n.16. In June 2015, the court approved the settlement as fair, reasonable, and adequate, rejecting the objecting class members' contentions that the settlement was procedurally or substantively deficient. Id. at *31. Shortly thereafter, Rhode Island passed the 2015 Amendments, amending RIRSA in accordance with the settlement agreement. See 2015 R.I. Pub. Laws ch. 141, § 21. The Superior Court subsequently entered judgment on the class-action lawsuit, determining:

> This Judgment is final and shall be binding on all parties and all class members in the above-referenced class action case for settlement purposes. Additionally, all class members are forever and completely barred from ever asserting any claims or causes of action that were alleged or brought or that could have been alleged or brought with respect to the various challenges to the Rhode Island pension statutes made and asserted in the above-captioned action and in each of the following matters, C.A. Nos. 10-2859, 12-3166, 12-3167, 12-3168, 12-3579, KC 14-0345 [i.e., the Clifford action], as the Court has previously found,

- 10 -

> determined and ruled that the terms and conditions of the Settlement Agreement, as now implemented and made effective by the Pension Legislation, are fair and reasonable.

R.I. Pub. Emps. Retiree Coal. v. Raimondo (RIPERC III), No. PC 2015-1468, 2015 WL 4501873, at *1 (R.I. Super. Ct. July 8, 2015), aff'd, Clifford, 184 A.3d at 695. Concurrently, the court dismissed the Clifford action with prejudice. Clifford v. Raimondo, No. KC 14-0345 (R.I. Super. Ct. July 8, 2015). A group of class members (including all appellants here) appealed both judgments, contesting the propriety of the class certification and the procedural and substantive fairness of the settlement. In 2018, the Rhode Island Supreme Court affirmed the Superior Court's decisions, finding that the trial justice "did not abuse her discretion in certifying the class" and in "concluding that the settlement was fair, reasonable, and adequate." Clifford, 184 A.3d at 690, 695.

Undeterred, appellants in 2020 sued the Governor of Rhode Island, ERSRI, and the Chairperson of the Retirement Board in federal court under 42 U.S.C. § 1983, alleging various violations of the Federal Constitution in connection with the changes to Rhode Island's retirement benefits scheme. In the first four Counts of their Complaint, appellants -- purporting to challenge the 2015 Amendments rather than RIRSA -- asserted that the reduction of their pension benefits violated the Due Process

- 11 -

Clauses of the Fifth and Fourteenth Amendments, the Contract Clause of Article I, Section 10, and the Takings Clause of the Fifth Amendment.[4] Appellants also alleged, in Count V, that the covenants concerning advocacy for legislative action in the settlement agreement abridged their right to petition in violation of the First and Fourteenth Amendments. Defendants moved to dismiss for failure to state a claim. The district court granted the motion, holding that appellants' claims were barred, inter alia, by res judicata, a lack of Article III standing, and the Rooker-Feldman doctrine. Efreom v. McKee, No. 20-122, 2021 WL 1424974, at *4-11 (D.R.I. Apr. 15, 2021). Appellants timely appealed.

## II. Discussion

### 1. Standard of Review

"We review a dismissal for lack of subject matter jurisdiction de novo, 'accepting the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences to their behoof.'" Davison v. Gov't of P.R-P.R. Firefighters Corps, 471

---

[4] As the district court noted, although appellants mistakenly referenced Article V, Section 10 of the Constitution in support of their Contract Clause claim, they "clearly intended to refer to Article I, Section 10." Efreom v. McKee, No. 20-122, 2021 WL 1424974, at *3 n.6 (D.R.I. Apr. 15, 2021). Further, because appellants' untitled Count IV "does not assert a separate cause of action" but "instead provides additional arguments to support Counts I, II, and III," we follow the district court in considering this claim together with the Contract, Takings, and Due Process Clause claims. Id. at *3.

F.3d 220, 222 (1st Cir. 2006) (quoting McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006)).

**2. Appellants' Due Process, Takings, and Contracts Clause Claims Are Barred by the Rooker-Feldman Doctrine**

Appellees contend, and the district court determined, that appellants lack Article III standing with respect to Counts I-IV. See Efreom, 2021 WL 1424974, at *8-9. As such, before we consider any merits issues, we must begin by addressing the "threshold matter" of whether we have federal subject-matter jurisdiction over these claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Because we conclude under the Rooker-Feldman doctrine that we lack jurisdiction, our inquiry with respect to Counts I-IV ends here.[5]

Under the Rooker-Feldman doctrine, we lack jurisdiction to consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

---

[5] "The Rooker-Feldman doctrine . . . implicates statutory, not Article III, jurisdiction." Sinapi v. R.I. Bd. of Bar Exam'rs, 910 F.3d 544, 550 (1st Cir. 2018) (emphasis omitted). Because we lack the former, we need not address the latter. See Lance v. Coffman, 549 U.S. 437, 439 & n* (2007) (per curiam) (explaining that federal courts may bypass Article III standing inquiry to determine jurisdiction under Rooker-Feldman); Am. Petroleum Inst. v. Env't Prot. Agency, 862 F.3d 50, 75 (D.C. Cir. 2017) ("[B]ecause we dispose of [petitioners'] challenge by concluding that we are without statutory jurisdiction, we have no reason to address [the] contention that [petitioners] lack Article III standing."), decision modified on reh'g, 883 F.3d 918 (D.C. Cir. 2018).

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine prevents losing litigants "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights," as only the Supreme Court has jurisdiction to review the decision of a state court in civil litigation. Id. at 287 (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)); see also 28 U.S.C. § 1257(a) (providing that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari," rather than by inferior courts).

It is just this type of impermissible appellate review that appellants seek in federal court. Dissatisfied with the outcome of the state-court litigation, appellants ask us to set aside the Rhode Island state courts' approval of the RIPERC class-action settlement, in an action commenced over two years after the Rhode Island Supreme Court rendered its final decision on the matter. It is undisputed that appellants (and defendants) were all parties to the original Clifford action, the RIPERC class, and the final appeal to the Rhode Island Supreme Court in Clifford v.

- 14 -

Raimondo.[6]  As such, appellants are "state-court losers" seeking, in effect, to review and reverse "state-court judgments rendered before the district court proceedings commenced."  Exxon Mobil Corp., 544 U.S. at 284.

Appellants nonetheless attempt to escape the vise of Rooker-Feldman by disputing, essentially, that their alleged injuries were actually "caused by" the state-court judgments.  Id. To this end, appellants emphasize that they primarily contest the constitutionality of the 2015 Amendments, whereas the earlier state-court judgments concerned RIRSA.  On this theory, passage of the 2015 Amendments -- by dint of "creating a distinct new law" -- worked a separate injury from that at issue in the state-court litigation, and this should suffice to defeat the Rooker-Feldman doctrine.

Even assuming arguendo that appellants' claims are indeed based on the 2015 Amendments rather than RIRSA,[7] appellants'

_____

[6] In a different context, appellants assert that because they were not in support of the RIPERC class settlement, their inclusion in the class was improper, and thus that identicality of parties between the instant case and the state-court litigation would not be satisfied for res judicata purposes.  This argument is a non-sequitur:  The mere fact that appellants disapproved of the settlement, but were outnumbered by supportive class members, does not render them nonparties to the RIPERC action or the subsequent appeal to the Rhode Island Supreme Court.  In any event, appellants have not argued that they were not a "losing party" for purposes of the Rooker-Feldman doctrine, Exxon Mobil Corp., 544 U.S. at 291, so any such contention has been waived.  See Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 239-40 (1st Cir. 2013).

[7] The district court rejected this characterization, finding

attempts to evade the Rooker-Feldman doctrine fail. Passage of the 2015 Amendments was a condition precedent for the settlement agreement that resolved the state-court pension litigation. Indeed, as the district court noted, "[t]he purportedly unconstitutional sections [of the 2015 Amendments] identified in the Complaint were contained verbatim in the settlement agreement," Efreom, 2021 WL 1424974, at *10, and the propriety of said settlement is the source of the alleged injury here. Appellants' attempt to undo the state-court rulings approving the settlement is precisely the sort of "end-run around a final state-court judgment" that the Rooker-Feldman doctrine proscribes.[8] Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 66 (1st

---

that RIRSA was the true basis for appellants' claims. See Efreom, 2021 WL 1424974, at *6-7. Nonetheless, the district court held, as we do, that the Rooker-Feldman doctrine would bar the suit "[e]ven if Counts I to IV were based on the 2015 [Amendments]." Id. at *10-11.

[8] Appellants do not contest that a settlement agreement can be a "final judgment" for purposes of the Rooker-Feldman doctrine. We thus assume, without deciding, that the settlement agreement at issue here was a final judgment under Rooker-Feldman. See Crestview Vill. Apartments v. U.S. Dep't of Hous. & Dev., 383 F.3d 552, 556 (7th Cir. 2004) ("For Rooker-Feldman purposes, a 'state court approved settlement agreement is a judgment or decision . . . .'" (quoting 4901 Corp. v. Town of Cicero, 220 F.3d 522, 528 n.5 (7th Cir. 2000))); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009) (holding that settlement agreements "constitute a state court judgment for purposes of Rooker-Feldman"); cf. Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004) (noting that, in the context of res judicata and release, "it is beyond cavil that a suit can be barred by the earlier settlement of another suit" (quoting Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 31-32 (1st Cir. 1991))).

Cir. 2018). Appellants' attempted reliance on cases such as Skinner v. Switzer, 562 U.S. 521 (2011) and Whole Woman's Health v. Hellerstedt, 579 U.S. 582 (2016), abrogated on other grounds by Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228 (2022), is thus misplaced, as the instant suit does not present an "independent claim" from the state-court litigation. Skinner, 562 U.S. at 532 (quoting Exxon Mobil Corp., 544 U.S. at 293).[9]

That the instant claims are grounded in the Federal Constitution, rather than the Rhode Island Constitution, does not

---

[9] Skinner held that "a state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." 562 U.S. at 532. Here, however, in challenging the settlement approved by the Rhode Island state court, appellants do not contest any rule or law governing the state-court decisions, but "challenge the adverse [state-court] decisions themselves." Id. This, per Skinner, is exactly what the Rooker-Feldman doctrine bars. Id.

Whole Woman's Health, which did not involve the Rooker-Feldman doctrine, is even less on point. In Whole Woman's Health, the Supreme Court found that res judicata did not bar an as-applied, postenforcement challenge to a Texas law imposing an onerous admitting-privileges requirement on abortion providers, where the factual landscape changed dramatically after the litigants brought a preenforcement challenge to the law. 579 U.S. at 601. There are no such "changed circumstances" or "new material facts" here that generate a new constitutional claim. Id. at 599, 601. While appellants express general displeasure with Rhode Island's implementation of the pension reforms, and hypothesize that the state may attempt to shirk its pension obligations in the future, appellants have not articulated a specific, cognizable claim that Rhode Island's postenactment behavior vis-à-vis the 2015 Amendments violates the Constitution. Any argument to this effect has thus been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

- 17 -

provide any succor for appellants.  "[A] plaintiff cannot escape the Rooker–Feldman bar through the simple expedient of introducing a new legal theory in the federal forum that was not broached in the state courts."  Id.  Indeed, our precedents make clear that litigants cannot "avoid the impact of the Rooker–Feldman doctrine simply by recasting [their] claims in federal court as arising under the United States Constitution, where adjudicating these claims would 'necessarily require reviewing the merits of the [state court's] decision.'"  Sinapi, 910 F.3d at 549 (quoting McKenna v. Curtin, 869 F.3d 44, 48 (1st Cir. 2017)); see also Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 33 (1st Cir. 2004) ("Rooker–Feldman does not depend on what issues were actually litigated in the state court; and it is enough that granting [litigants the relief they] seek[] would effectively overturn the state court's decision.").[10]

Appellants also claim that Rooker–Feldman should not apply because their due process rights were violated by the Rhode

[10] We note, in any event, that appellants' federal claims largely echo their previous attacks on the propriety of the settlement in state court.  Indeed, the fairness, adequacy, and reasonableness of the settlement agreement (including the proposed legislation that became the 2015 Amendments) were energetically contested at the fairness hearing, approved by the Superior Court, and affirmed by the Rhode Island Supreme Court.  See RIPERC II, 2015 WL 3648161, at *31; Clifford, 184 A.3d at 695.  The fact that the issues appellants now raise in federal court were, in substantial measure, raised and rejected in state court accords with our independent conclusion that these claims are grounded in an injury attributable to the state-court judgments.

Island courts' decision to certify the RIPERC class under Rule 23(b)(2) of the Rhode Island Superior Court Rules of Civil Procedure, which does not afford class members any opt-out rights. In support of their argument, appellants allege that they were treated differently from another group of pension litigants opposed to the settlement agreement -- i.e., the active police officers and fire personnel of the City of Cranston (the "Cranston litigants") -- who were not included in the certified class and thus able to litigate separately. See Cranston Firefighters, 880 F.3d at 47 (noting that while the Cranston litigants "receive some of the advantages of the 2015 Amendments, they did not participate in the settlement, and their members are not subject to the state court judgment approving the settlement"). Asserting that the "[s]tate [c]ourts did not take up the issue of the[ir] disapproval" of the settlement or consider their "repeated[] request[s]" to opt out of the class, in light of the Cranston litigants' exclusion therefrom, appellants posit that they were denied due process. This alleged due process violation, appellants suggest, generates an exception to the Rooker-Feldman jurisdictional bar.[11]

---

[11] The existence of an exception wherever there is a claim of a due process violation is dubious. See, e.g., Abbott v. Michigan, 474 F.3d 324, 330 (6th Cir. 2007) (concluding that "the Supreme Court's recent decisions do not support the plaintiffs' asserted 'reasonable opportunity' exception to the Rooker-Feldman doctrine"); Postma v. First Fed. Sav. & Loan of Sioux City, 74 F.3d 160, 162 n.3 (8th Cir. 1996) ("[T]here is no procedural due process exception to the Rooker-Feldman doctrine."). For a survey

Appellants' due process claim, however, does not clear Rooker-Feldman's hurdle. The propriety of the class certification under Rule 23(b)(2) -- and appellants' assertion that they ought to have been afforded an "opt out" right -- were in fact extensively litigated in state court. See RIPERC I, 2015 WL 1872189, at *7-8 (determining that the proposed class met the criteria for certification under Rule 23(b)(2) of the Rhode Island Superior Court Rules of Civil Procedure); RIPERC II, 2015 WL 3648161, at *13-14, *24 (noting certain class members' "desire to 'opt out' of the current settlement" but determining that "due process does not require that the Objectors be given the opportunity to 'opt out' of a Rule 23(b)(2) class action settlement"); Clifford, 184 A.3d at 685-90 (discussing class certification and certain litigants' asserted opt-out rights, but concluding that "trial justice's inclusion of the Retiree plaintiffs in the retiree subclass was proper" and that "the trial justice did not abuse her discretion in certifying the class pursuant" to Rule 23(b)(2)). Thus, in no way were appellants

---

of the jurisprudential thicket surrounding this issue, see generally 18B Wright, Miller & Cooper, Federal Practice and Procedure § 4469.3, at 163-70 (3d ed. 2019) (stating that "[s]tate-court disregard of due process rights creates genuine trouble for the Rooker-Feldman jurisdiction theory," but noting that much caselaw "suggest[s] that federal jurisdiction is defeated [even] by a state judgment entered after proceedings that did not afford a full-and-fair opportunity to litigate, and indeed did not satisfy due process requirements").

denied the opportunity to be "actually heard on their claims." Accordingly, even if we were to agree that federal jurisdiction might be available in certain instances where a party was denied a full-and-fair opportunity to litigate its claims, no such exception to the Rooker-Feldman doctrine is applicable here. See Mandel v. Town of Orleans, 326 F.3d 267, 272 & n.4 (1st Cir. 2003) (denying jurisdiction under Rooker-Feldman to federal due process challenge to state child custody enforcement proceedings when challenger "was formally a party to the enforcement proceeding and was free to ask the state court to undo or revisit its enforcement order on constitutional or other grounds").

"The Rooker-Feldman doctrine bars parties who lost in state court from 'seeking review and rejection of that judgment' in federal court." Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (quoting Exxon Mobil Corp., 544 U.S. at 291). In attempting to effectively overturn the decisions of the Rhode Island state courts approving the RIPERC class-action settlement, Appellants in Counts I-IV run afoul of this stricture. Because under Rooker-Feldman "[o]nly the Supreme Court of the United States may invalidate state court civil judgments," see Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009), we lack jurisdiction over these claims.

**3. Appellants' First Amendment Claims Are Nonjusticiable**

Appellants lastly challenge the provisions of the

settlement agreement that prohibited them from lobbying, directly or indirectly, for pension benefits other than as provided in the draft legislation that became the 2015 Amendments. By imposing such a restriction, appellants argue, these provisions created a "chilling effect" that violated their First Amendment rights to free speech and to petition the government for a redress of grievances. Accordingly, in their prayer for relief, appellants ask that these provisions of the settlement agreement be declared unconstitutional.

Before we can consider the merits of this argument, however, we must again assess whether we have jurisdiction, or if appellants instead lack standing to raise this claim. The "[s]tanding doctrine assures respect for the Constitution's limitation of '[t]he judicial Power' to 'Cases' and 'Controversies.'" Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016) (alteration in original) (quoting U.S. Const. art. III, § 2, cl. 1). In assessing whether litigants have constitutional standing, we look to the "familiar amalgam of injury in fact, causation, and redressability," which injury "must be both 'concrete and particularized and actual or imminent, not conjectural or hypothetical.'" Id. (quoting Van Wagner Bos., LLC v. Davey, 770 F.3d 33, 37 (1st Cir. 2014)). Redressability concerns the "likelihood that the requested relief will redress the alleged injury." Steel Co., 523 U.S. at 103. "To determine

- 22 -

whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." California v. Texas, 141 S. Ct. 2104, 2115 (2021) (quoting Allen v. Wright, 468 U.S. 737, 753 n.19 (1984)).

Per the terms of the settlement agreement, the covenant providing that the parties "will not, directly or indirectly, propose, support, encourage or advocate for any legislative action concerning or relating to retirement benefits other than the adoption of the [2015 Amendments]" expired upon "final approval of the settlement and enactment of the [2015 Amendments] and entry of judgment." All of these conditions were met in 2015, meaning that any chilling effect of this covenant ceased years before the instant litigation commenced.[12] As such, at the time appellants' federal complaint was filed, appellants were free to petition the government as they wished regarding their retirement benefits. Appellants thus allege only a past injury in relation to their First Amendment claim. Their complaint does not seek any damages for that claim, cf. Uzuegbunam v. Preczewski, 141 S. Ct. 792, 796

---

[12] The agreement also restricted the ability of the parties to "directly or indirectly, propose, support, encourage and/or advocate that any other person, firm or entity do anything or refrain from doing something that a party to this Settlement Agreement would be prohibited from doing or refraining from doing hereunder," and provided that this covenant is "unlimited as to time." However, because the restrictions on appellants' pension advocacy lapsed upon the satisfaction of the conditions laid out above, any chilling effect from this covenant similarly thawed in 2015.

(2021) (holding that "an award of nominal damages by itself can redress a past injury"), and it is plain that plaintiffs lack standing to seek declaratory relief with respect to a past injury when such relief cannot redress the injury. See Berner v. Delahanty, 129 F.3d 20, 24 (1st Cir. 1997) (explaining that "a party seek[ing] exclusively injunctive or declaratory relief" has standing only upon showing "'a sufficient likelihood that he will again be wronged in a similar way'" (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983))); Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376-77 (1st Cir. 1992) (holding that plaintiffs lacked standing to seek declaratory or injunctive relief that would "provide no relief for an injury that is, and likely will remain, entirely in the past"; Lyons, 461 U.S. at 109-10 (past injury, absent a reasonable likelihood of future repetition, provided apparent standing to pursue damages but no standing to seek injunctive relief); California, 141 S. Ct. at 2114-15 (challenge to an unenforceable statutory provision failed because there was no present or anticipated injury resulting from the provision's enforcement, and neither injunctive nor declaratory relief could provide redress in such circumstances).

Because appellants have not alleged any ongoing or potential injury from the now-inoperative covenants at issue, and have not sought relief that could redress their alleged past injury, their First Amendment claim lacks the "elements of a

justiciable controversy." Steel Co., 523 U.S. at 95. "To find standing here to attack an unenforceable . . . provision would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief.'" California, 141 S. Ct. at 2116 (quoting Lyons, 461 U.S. at 129 (Marshall, J., dissenting)). Under Article III, we lack such authority. Id.; see also Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) ("If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case."); N.E. Reg'l Council of Carpenters v. Kinton, 284 F.3d 9, 18 (1st Cir. 2002) (noting that "it would be pointless . . . to declare [the] constitutional status" of a restriction "that is no longer in effect").[13] As such, we dismiss appellants' First Amendment claim for lack of standing.

## III. Conclusion

The judgment of the district court is **affirmed**.

---

[13] Because we lack Article III jurisdiction over the First Amendment claim, we need not address the district court's conclusion that the claim was also barred by the Rooker–Feldman doctrine. See Efreom, 2021 WL 1424974, at *11.